FINANCE COMMISSION OF BOSTON *vs.* MAYOR OF
BOSTON & another.[1]

Suffolk.    May 5, 1976. — July 19, 1976.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Boston, Boston Finance Commission.    Investigating Body.    Municipal
Corporations,* Employees.    *Witness,* Before investigating body, Right
to counsel.    *Constitutional Law,* Who may question constitutionality.

Witnesses appearing in an investigative proceeding by a municipal fi-
nance commission, which had no adjudicatory powers, had no con-
stitutional right to the assistance of counsel. [696-697]
Despite the fact that witnesses appearing before a municipal finance
commission had a right to be represented by counsel pursuant to St.
1908, c. 562, and St. 1909, c. 486, which established the commission,
in the circumstances of an investigation into political fund-raising
activities of the mayor, it was a valid exercise of the commission's
power in "prescrib[ing] reasonable rules and regulations for the
conduct of hearings and the giving of testimony" to exclude from
its closed hearings attorneys either selected by the mayor or his
agents or regularly employed by the city. [697-698]

CIVIL ACTION commenced in the Superior Court on Oc-
tober 15, 1975.

The case was heard by *Lynch,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Herbert P. Gleason,* Corporation Counsel (*Harold J.
Carroll,* Assistant Corporation Counsel, with him) for the
defendants.

*Edward J. Barshak* (*Peter L. Puciloski* with him) for
the plaintiff.

BRAUCHER, J.    The Finance Commission of Boston
(commission) undertook to investigate the political fund
raising activities of the mayor of Boston, and in the course

---

[1] City of Boston.

of the investigation voted to exclude from its closed hearings attorneys who are selected by the mayor or his agents within his administration or who are regularly employed by the city. The mayor and the city appeal from a judgment of the Superior Court declaring, subject to certain exceptions, that such a limitation, restriction or regulation is valid. We granted the applications of all parties for direct appellate review, and we affirm the judgment.

We summarize the statement of agreed facts. The commission was established by St. 1908, c. 562, and St. 1909, c. 486. Section 2 of the 1908 statute grants to the commission the power to require the testimony of witnesses and provides: "Each of such witnesses may be represented by counsel who may cross-examine the witness for whom he appears for not more than ten minutes during his examination. . . . The commission may prescribe reasonable rules and regulations for the conduct of hearings and the giving of testimony." Section 21 of the 1909 statute carries forward "all the powers and duties" conferred by the 1908 statute, "but counsel for any witness at any public hearing may ask him any pertinent question and may offer pertinent evidence through other witnesses subject to cross-examination by the commission and its counsel." Before October 14, 1975, the commission's "Rules of Procedure Governing the Conduct of Hearings and the Giving of Testimony" granted each witness the right to be accompanied, represented and advised "by counsel of his own choice."

On March 13, 1975, the commission voted to investigate the mayor's political fund raising; the principal areas of inquiry were to be coercion or other improper influence with respect to city employees, contractors with the city or county, and applicants for or recipients of tax abatements. Thereafter three city employees represented by private counsel testified under oath in closed hearings, twenty made unsworn statements without counsel, and one was represented by an assistant corporation counsel, about whose presence the hearing officer complained.

On August 29, 1975, the commission requested nine more city employees to testify under oath in closed hearings on September 3. On September 2, the mayor met with six of the nine and told them he would provide counsel to represent them before the commission individually if they wanted such counsel. On September 3 one of the witnesses appeared at the scheduled hearing accompanied by an attorney selected and provided by the mayor himself. The attorney stated that he would be representing witnesses in this group of city employees, and because of his presence the presiding officer adjourned the hearing. A similar incident occurred on or about September 9.

On October 14, 1975, pursuant to its power to prescribe rules and regulations, the commission voted on the recommendation of the chairman, to "exclude from closed hearings to be conducted pursuant to the current investigation into the Mayor's fundraising activities attorneys who are selected by the Mayor or by his agents within his administration or an attorney who is regularly employed by the City of Boston." The reasons given for the chairman's recommendation were: (1) the presence of an assistant corporation counsel "opens up" a closed hearing, since he has a duty to report back to the corporation counsel who in turn has a duty to report to the mayor. (2) The "offer" of counsel by the mayor would be construed by city employees as one they must accept. (3) The presence of counsel responsible to or selected by the mayor would have a chilling effect on the testimony of the witness he represented.

The commission commenced this civil action for a declaratory judgment on October 15, 1975. On November 13, 1975, a judge of the Superior Court filed a comprehensive and thoughtful memorandum of decision and a judgment declaring that the commission's vote of October 14, 1975, with certain modifications, is a valid exercise of its power to adopt reasonable rules and regulations for the conduct of its hearings. The modifications are that the limitation, restriction or regulation shall not apply if the witness and

the attorney stand in a "special relationship," and that there is a "special relationship" " (1) when the witness and the attorney are related by blood or marriage, (2) when there presently exists or has existed between them a lawyer-client relationship, (3) when the attorney has been closely associated with the witness in the activities about which the witness is to be questioned, or (4) when other special circumstances are found by the Fin Com sufficient to warrant the appearance by the attorney for the witness." A prospective witness is to have a reasonable opportunity to persuade the commission that there is a "special relationship." Nothing in the judgment is to prevent the city from reimbursing a witness for his attorney's fees or from paying the fees directly. The judgment also enjoins the mayor, his agents, corporation counsel, and other representatives within his administration from selecting, designating or providing counsel for witnesses in closed hearings of the commission relating to the mayor's political fund raising from city employees, except in cases of "special relationship."

1. *Actual controversy.* The judge found that there was an actual controversy between the parties, as required by G. L. c. 231A, § 1. We are informed that the commission subsequently completed the particular investigation and made its report to the mayor. The injunctive provisions of the judgment are therefore now moot, but the parties do not assert that the case is moot. The declaratory provisions of the judgment apply to subsequent investigations as well, and there is no question that the controversy continues.

2. *The constitutional setting.* As the judge said, this case does not turn on a constitutional question. The function of the commission, like that of the Commission on Civil Rights involved in *Hannah* v. *Larche*, 363 U.S. 420, 441 (1960), "is purely investigative and fact-finding. It does not adjudicate. It does not hold trials or determine anyone's civil or criminal liability. It does not issue orders. Nor does it indict, punish, or impose any legal sanctions. It does not make determinations depriving anyone of his

life, liberty, or property. In short, the Commission does not and cannot take any affirmative action which will affect an individual's legal rights. The only purpose of its existence is to find facts which may subsequently be used as the basis for legislative or executive action." Hence "it is not necessary that the full panoply of judicial procedures be used." *Id.* at 442. Witnesses "appearing before investigating agencies, whether legislative, executive, or judicial, have generally not been accorded the rights of apprisal, confrontation, or cross-examination." *Id.* at 449. A witness in a purely investigative proceeding has no constitutional right to the assistance of counsel while being interrogated. *Anonymous Nos. 6 and 7* v. *Baker,* 360 U.S. 287, 295 (1959). *In re Groban,* 352 U.S. 330, 333 (1957).

3. *The statutory right to counsel.* The very same 1908 statute that granted a right to counsel to witnesses before the commission also authorized "reasonable rules and regulations" for the conduct of hearings and the giving of testimony. We agree with the opinion of the Attorney General, given in 1915, that the 1908 and 1909 statutes "create a right in the witness to be represented by counsel, and it is obvious that the commission has no power to withdraw this right." 4 Op. Att'y Gen. 451, 456 (1915). The right is that of the witness, not of the mayor of the city. No witness is a party to the present case, and no right of a witness can be foreclosed by the judgment under review.

As between the parties to this case, however, we do not agree with the Attorney General's opinion that, if a witness requests as counsel a member of the legal department of the city and the member appears as counsel for the witness, "the commission has no power to exclude such counsel from being present while the witness is testifying." *Ibid.* The question is whether the limitation imposed by the commission is "reasonable" in striking a balance between the interest of the commission in conducting an effective investigation and the interests of potential witnesses.

Authority in other jurisdictions is sparse and conflicting. Some trial court decisions under the Administrative Pro-

cedure Act, 5 U.S.C. § 555(b) (1970), have upheld disqualification of counsel for a person under investigation from also representing a witness. *United States* v. *Steel,* 238 F. Supp. 575, 577 (S.D.N.Y. 1965). *Torras* v. *Stradley,* 103 F. Supp. 737, 738 (N.D. Ga. 1952). *United States* v. *Smith,* 87 F. Supp. 293, 294 (D. Conn. 1949). But appellate decisions have construed the right to counsel granted by that Act to mean "counsel of one's choice." *Securities & Exch. Comm'n* v. *Higashi,* 359 F.2d 550, 553 (9th Cir. 1966). *Backer* v. *Commissioner,* 275 F.2d 141, 144 (5th Cir. 1960). In *Pirillo* v. *Takiff,* 462 Pa. 511, 531 (1975), on rehearing, 466 Pa. 187 (1976), appeal dismissed and cert. denied, 423 U.S. 1083 (1976), the court approved an order that no two grand jury witnesses be represented by the same counsel, but a similar order was vacated in *In re Investigation Before the April 1975 Grand Jury,* 531 F.2d 600, 608 (D.C. Cir. 1976).

We adopt the primary reason given by the judge for upholding the commission's rule: "Common sense indicates that such presence and participation [by attorneys selected by the person investigated] might well inhibit and hinder the effectiveness of the hearings and the investigation as a whole. At least the possibility is sufficient to validate the rule." We are less confident that he was correct in saying that the only advantage to the witnesses is the benefit of counsel free of charge; jointly retained counsel may also facilitate a joint defense. See *Matter of Grand Jury Subpoena Duces Tecum Dated November 16, 1974,* 406 F. Supp. 381, 386-389 (S.D.N.Y. 1975). Nor do we rely on any beneficent desire of the commission to protect the witnesses, against their desires, from supposed injury flowing from counsel's alleged conflicts of interest. See *Pirillo* v. *Takiff, supra,* 462 Pa. at 528. We do not think the commission has any power to prevent witnesses before it from disclosing their testimony to anyone they choose. See *In re Investigation Before the April 1975 Grand Jury, supra,* 531 F.2d at 606-607 n.11. But it is still "reasonable" for the commission to take what steps it can to maintain the confidentiality of testimony taken in its closed hearings.

4. *"Special relationships."* The commission did not appeal from the judgment and does not complain of the judge's modifications of its limitations. We therefore do not review his power to make such modifications. The mayor and the city however, contend that the modifications "aggravate the wrong to employees by creating a classification of employees exempt from the exclusionary rule based on improper standards." In substance, they claim a denial of equal protection of the laws, citing *Arrington* v. *Massachusetts Bay Transp. Authority*, 306 F. Supp. 1355, 1358 (D. Mass. 1969). We do not think this claim is one that the mayor or the city, as distinguished from the witnesses, can assert. Cf. *Boston Licensing Bd.* v. *Alcoholic Beverages Control Comm'n*, 367 Mass. 788, 794 (1975).

*Judgment affirmed.*