COMMONWEALTH vs. TALLY DAVIS.

Suffolk. October 4, 1978. — December 11, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Practice, Criminal,* Assistance of counsel. *Conflict of Interest. Evidence,* Cross-examination, Relevancy and materiality, Other offense.

A criminal defendant was not denied his right to effective assistance of counsel by his attorney's joint representation of the defendant and codefendant where the record did not disclose any conflicting interests between the defendants or any material prejudice to the defendant. [780-784]

In all criminal actions commencing after the publication date of this opinion where an attorney represents more than one defendant in the same proceeding, a trial court's obligation to ensure a fair and impartial trial will include an affirmative duty to assure that each defendant is adequately informed of the risks and potential dangers of joint representation and that each acknowledges an understanding of this information. [784-787]

At the trial of a defendant charged with possession of cocaine with intent to distribute, the defendant was not prejudiced by the exclusion of a question by defense counsel to a police officer as to whether he had requested a quantitative analysis of tin foils containing cocaine where the evidence in question had been brought out previously in the trial and where defense counsel later asked the witness essentially the same question and received an answer. [787-788]

At the trial of a defendant charged with possession of cocaine with intent to distribute, possession of heroin, and unlawful possession of methadone with intent to distribute, there was no error in admitting testimony that small manila envelopes seized from a room occupied by the defendant were used for the bagging of heroin even though the defendant was not charged with intent to distribute heroin. [788-789]

INDICTMENTS found and returned in the Superior Court on March 19, 1976.

The cases were tried before *Tracy*, J., a District Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Steven J. Rappaport* for the defendant.

*Michael J. Traft*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant, Tally Davis, was indicted for unlawful possession of cocaine with intent to distribute, possession of a revolver without a firearm identification card, possession of heroin, unlawful possession of methadone, with intent to distribute, and receiving stolen goods not exceeding $100. Verdicts of guilty were returned by the jury on all five indictments, and the trial judge imposed a jail sentence and a fine. Davis now appeals pursuant to G. L. c. 278, §§ 33A-33G, claiming that he was denied effective assistance of counsel due to a conflict of interest, that the judge made erroneous evidentiary rulings, and that the defendant's bail and cash seized pursuant to a search warrant were improperly confiscated.

We affirm the judgments of conviction. In so ruling, however, we establish procedural guidelines for trial courts confronted with joint representation of codefendants by a single attorney.

The following is a summary of the facts. On January 15, 1976, at 6:15 A.M., Detective Thomas Maher (Maher) of the Boston police drug control unit, acting pursuant to a search warrant, led seven State and Federal officers to the apartment of Pearl Tubbs in Roxbury. The door was broken open, and Davis was discovered there with a woman, Marjorie Waddel.[1] Found in the room occupied by Davis and Waddel were a fully loaded firearm and a large brown box containing the following items: a pouch with

---

[1] Waddel was identified in testimony as Davis's "girl friend." In fact, she called herself Marjorie Davis.

ten grams of a white substance later analyzed to be cocaine; six tin foils enclosing cocaine; a small vial and nose dropper containing a liquid identified as methadone; seventy-four small manila envelopes; $2,969 in cash; twenty American Express checks; a five dollar bill containing traces of cocaine; several spoons having a cocaine residue on them; a notebook; nine Western Union money order receipts. A manila envelope containing heroin was found adjacent to Davis's bed, and in the kitchen, at the other end of the apartment, the officers discovered eleven bottles subsequently found to contain a methadone residue.

Davis and Waddel were tried together in the Superior Court in Suffolk County along with Tubbs, in whose apartment the search had occurred. Davis and Waddel were represented by the same attorney, whom they retained shortly after their arrests. Tubbs was represented by separate counsel.

At the trial, Maher, an experienced narcotics officer, was the chief prosecution witness. He identified the seized narcotics and testified that the value of the drugs was $600 for the six tin foils, $900 to $1,000 for the cocaine found in the pouch, and $200 for the dropper bottle of methadone. Maher also explained that the spoons found were used to measure cocaine and that the probable use for the seventy-four manila envelopes was to "bag" heroin. William Yout, an agent of the Drug Enforcement Administration, further testified that the defendant had stated to him that he did not use drugs.

Davis testified and admitted to periodic use of narcotics, but denied any involvement in their sale or distribution. He admitted that he purchased the seized methadone and tin foils of cocaine for his personal use at a total cost of $60, and he explained that the ten-gram pouch of white substance was not cocaine, but lactose, a narcotic dilutant which he used because his nose was sensitive. In addition, he testified that the Western Union money order receipts found in the box represented gambling proceeds, rather than profits from drug sales, as the prosecution had suggested.

Waddel corroborated Davis's story. While denying any involvement in drug related activity on her own part, she testified that Davis was merely an occasional drug user, not a drug dealer. She stated that she was with Davis when he had purchased the seized methadone and cocaine, and she confirmed the amounts purchased and prices paid by him. Likewise, Waddel substantiated Davis's assertion that the white substance found inside the pouch was lactose and was used by the defendant in order to prevent irritation to his nose.

1. *Joint Representation of Codefendants.*

On appeal, Davis maintains that his Sixth Amendment right to effective assistance of counsel was gravely impaired by a conflict of interest inhering in the joint representation of himself and the codefendant Waddel. See *Commonwealth* v. *Geraway*, 364 Mass. 168 (1973); *Glasser* v. *United States*, 315 U.S. 60 (1942). This conflict was manifest, he asserts, by trial counsel's failure to develop the possibility that the codefendant Waddel possessed the contents of the seized box,[2] and by counsel's statement, made in arguing motions for directed verdicts for the codefendant, that the narcotics belonged to Davis. On the basis of this conduct by trial counsel, the defendant claims entitlement to a new trial.[3]

We begin our consideration by reviewing the cardinal principles underlying analysis of conflict of interest claims in criminal cases. First of these is the defendant's constitutional right under the Sixth and Fourteenth Amendments to the United States Constitution or art. 12 of our Declaration of Rights to an attorney unhampered or unfettered in his professional responsibility to the accused. See *Glasser* v. *United States, supra* at 76. A defendant is entitled to the untrammeled and unimpaired assis-

---

[2] Davis suggests that defense counsel should have focused attention on the codefendant's possession of a key to the box in which the controlled substances were found.

[3] New counsel has been substituted on appeal.

tance of counsel free of any conflict of interest and unrestrained by commitments to others. *Id.*

Despite the dimension of this right, we have held that a defendant's conviction will be reversed on this basis only when the alleged conflict is supported by adequate evidence of its existence. *Commonwealth* v. *Smith*, 362 Mass. 782, 784 (1973). *Englehart* v. *Commonwealth*, 353 Mass. 561, 562, cert. denied, 393 U.S. 886 (1968). By this we mean that the defendant, on appeal, is obliged to show demonstrative proof detailing the precise character of the alleged conflict of interest. We will not infer a conflict of interest from simply the existence of joint representation, see *Commonwealth* v. *Adams*, 374 Mass. 722, 731 (1978); *Holloway* v. *Arkansas*, 435 U.S. 475, 487-489 (1978), or out of mere conjecture or speculation as to what might have been shown at trial, *United States* v. *Alvarez*, 580 F.2d 1251, 1255 (5th Cir. 1978); *Lugo* v. *United States*, 350 F.2d 858, 859 (9th Cir. 1965).

A genuine conflict of interest, however, may be shown in two ways: by reference to the trial record, or by evidence extrinsic to court proceedings. Stated otherwise, we are cognizant that some genuine conflicts may be manifest in judicial proceedings, see *Glasser* v. *United States*, *supra* at 67-69, while others may be obscured from the court before and during trial, see *Commonwealth* v. *Geraway, supra*. Since what counsel or a witness refrains from saying in court because of economic or personal constraints generated from outside may be as damaging to a defendant as anything reported in the trial transcript, either kind of proof is appropriate to show a conflict.

Regardless of the source from which the conflict is derived, to establish a violation of one's right to counsel a defendant need only demonstrate the existence of a conflict. Once a conflict is shown, there is no requirement that resulting prejudice be proved. See *Commonwealth* v. *Wright, ante* 725, 730 (1978); *Commonwealth* v. *Leslie, ante* 647, 651-652 (1978); *Commonwealth* v. *Bolduc*, 375 Mass. 530, 540-543 (1978); *Holloway* v. *Arkansas, supra* at

487-489. Moreover, we do not preclude the possibility that allegations of conflict, too remote in themselves to establish that counsel's loyalty was divided, might well provide a basis for a new trial when accompanied by a showing of material prejudice. *Commonwealth* v. *Leslie, supra* at 651. See *Miller* v. *United States,* 564 F.2d 103, 106-107 (1st Cir. 1977), cert. denied, 435 U.S. 931 (1978).

In light of the above, we examine the merits of the defendant's claim of conflict of interest. Reviewing all the material before us, we are compelled to conclude that trial counsel's performance in the instant case bears no mark of being shackled or impaired by commitments to persons other than the defendant. Indeed, an examination of the record here fails to find any visible sign of conflicting interests between the defendants Davis and Waddel. Neither the defendants, nor trial counsel, ever alerted the court to a conflict or requested the severance of counsel's relationship with one of the two defendants. Compare *Holloway* v. *Arkansas, supra* at 477-481.[4] Significantly, both codefendants in this case testified, and their testimony was consistent in virtually every respect. *United States* v. *Foster,* 469 F.2d 1, 4 (1st Cir. 1972).[5] Cf. *United States* v. *Martorano,* 457 F. Supp. 803, 810 (D. Mass. 1978). Each stated that Davis never sold narcotics and that Davis's purchase of the seized drugs was for his personal use only. Indeed, Waddel's testimony concerning Davis was no more incriminating of him than the in-court admissions made by Davis himself. Moreover, we are unable to find sufficient evidence of conflict in counsel's brief mention of Davis's admitted culpability in the

_____

[4] In *Holloway* v. *Arkansas,* 435 U.S. 475, 485-487 (1978), the Supreme Court held that trial courts are obliged to appoint new counsel when faced with a motion for separate representation by jointly represented defendants.

[5] Compare *Mone* v. *Robinson,* 430 F. Supp. 481, 482-483 (D. Conn. 1977); *State* v. *Land,* 73 N.J. 24, 28-29 (1977). In neither of these cases did both defendants testify. Were that the case here we might be more hesitant in concluding the absence of conflicting interests.

course of his directed verdict motions for Waddel. Since Davis had already confessed to purchasing and possessing the seized narcotics, and considering that discussion of the directed verdict motions occurred with the jury removed from the court room, counsel's fleeting reference to this testimony, taken by itself, is insufficient to demonstrate that counsel's loyalty was torn between the two codefendants. Because this momentary remark in the record constitutes the only evidence Davis presents to us, we are offered no basis for finding a conflict.

Despite our inability to find divergent interests reflected in the record, we would still overturn the trial judgments on an allegation of potential conflict coupled with a showing of material prejudice. However, in our view, the materially prejudicial conduct of counsel alleged by Davis, even if suggestive of a conflict, is too slight to merit reversal. The fact that trial counsel did not develop the possibility that Waddel shared possession of the contents of the brown box must be viewed in light of the overwhelming, indeed incontrovertible, evidence connecting Davis with the seized drugs. Any adverse effect to the defendant owing to counsel's failure in this regard appears minimal, at most.

Similarly, we cannot conclude that the defendant was prejudiced by counsel's single mention of Davis's self-incriminating testimony. Davis raises the possibility in oral argument that counsel's comment on his culpability might have played an important role in the judge's later decision to impose a heavier sentence on Davis than on Waddel, who also was convicted. The record provides no basis for this conclusion. Instead, it discloses that trial counsel in his pre-sentencing remarks fully represented the interests of Davis and that he made no adverse comparison between Davis and Waddel in his comments in behalf of the latter. In short, we believe that the source of the defendant's problems in this case was not the fact of joint representation but rather the prosecution's introduction of clear and admissible proof of the defendant's

guilt. See *United States* v. *Wisniewski*, 478 F.2d 274, 284 (2d Cir. 1973); *United States* v. *Jones*, 436 F.2d 971, 972 (6th Cir. 1971).

Although we conclude that the defendant was not prejudiced in this particular case, we are acutely conscious of the problems that may arise when an attorney represents more than one criminal defendant in the same proceeding. Joint representation may be plagued by conflicts of interest at various stages of trial: at plea bargaining,[6] in selecting defenses for individual defendants, in deciding whether to call one of the defendants as a witness, in closing argument, and in sentencing. See Geer, Representation of Multiple Criminal Defendants: Conflicts of Interest and the Professional Responsibilities of the Defense Attorney, 62 Minn. L. Rev. 119, 125-135 (1978); Annot., 34 A.L.R.3d 470 (1970 & Supp. 1978). Moreover, appellate review in many of these circumstances is unsatisfactory, because trial records are inherently incapable of registering forgone arguments and lost defenses. See *Lollar* v. *United States*, 376 F.2d 243, 246-247 (D.C. Cir. 1967); Hyman, Joint Representation of Multiple Defendants in a Criminal Trial: The Court's Headache, 5 Hofstra L. Rev. 315, 326 (1977). Therefore, we think it appropriate for this court to establish guidelines designed to prevent situations where codefendants might be prejudiced by inconsistent interests.[7]

Accordingly, in all criminal actions commencing after the publication date of this opinion, the trial court's obligation to ensure a fair and impartial trial will include an affirmative duty to assure that each defendant is adequately informed of the risks and potential dangers of joint representation and that each acknowledges an understanding of this information. In adopting this pro-

---

[6] See *Commonwealth* v. *Bolduc*, 375 Mass. 530 (1978).

[7] These guidelines may well suggest appropriate amendment to the Proposed Rules of Criminal Procedure for the District & Superior Courts which are scheduled to take effect July 1, 1979.

phylactic measure, the Commonwealth joins several States and most of the Federal circuits in finding such procedures advisable, although not constitutionally required. See, e.g., *United States* v. *Foster,* 469 F.2d at 4-5; *United States* v. *Carrigan,* 543 F.2d 1053, 1056 (2d Cir. 1976); *United States ex rel. Hart* v. *Davenport* 478 F.2d 203, 211 (3d Cir. 1973); *United States* v. *Truglio,* 493 F.2d 574, 579 (4th Cir. 1974); *United States* v. *Garcia,* 517 F.2d 272, 278 (5th Cir. 1975); *United States* v. *Lawriw,* 568 F.2d 98, 105 (8th Cir. 1977), cert. denied, 435 U.S. 969 (1978); *Campbell* v. *United States,* 352 F.2d 359, 360 (D.C. Cir. 1965); *People* v. *Gomberg,* 38 N.Y.2d 307, 313 (1975); *State* v. *Olsen,* 258 N.W.2d 898, 907 (Minn. 1977).

While we leave to the discretion of the trial court the exact form and procedure of this examination,[8] we believe that as part of the affirmative inquiry the defendant should be given an opportunity to inquire as to the nature and consequences of joint representation. See *United States* v. *Donahue,* 560 F.2d 1039, 1044 (1st Cir. 1977). The court, furthermore, should assure that each defendant has discussed the potential for conflicting interests with his attorney and that the accused understands that separate counsel may be retained or, in appropriate cases, appointed and paid for by the Commonwealth. In cases like the one at bar, where closely related parties are jointly represented, the court should be cognizant of the possibility of domination or martyrdom by one defendant or the other. See *People* v. *Ramsey,* 17 Cal. App. 3d 731, 734 (1971). The entire procedure, of course, should be placed on the record for review.[9]

---

[8] Rule 12 (c) (3) of the Proposed Rules of Criminal Procedure directs the judge, in accepting pleas of guilty or nolo contendere, to inform the defendant, or to "permit defense counsel under the direction of the judge to inform the defendant, on the record, in open court" of the consequences of entering such pleas. A similar procedure might prove appropriate for notifying defendants of the dangers of joint representation.

[9] We recognize that "[t]here may be unusual circumstances where to avoid the possibility of prejudicial disclosures to the prosecution,

When a satisfactory inquiry is absent from the record, the Commonwealth will bear the burden of demonstrating by a preponderance of the evidence that prejudice to the defendant was improbable.[10] See *United States* v. *Foster, supra* at 5. Conversely, a defendant who is adequately informed yet fails to seek separate representation will be hard pressed to persuade us that he was deprived of a fair trial on account of a conflict of interest arising from joint representation.

Implicit in the protective procedure outlined above is our awareness of the increasing frequency of postconviction proceedings which raise the issue of conflict by reason of joint or multiple representation. We believe, however, that the responsibility for avoiding conflicts in such circumstances must be shouldered primarily by defense counsel, with the court having a supervisory responsibility. "The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation." ABA Standards Relating to the Defense Function § 3.5 (b) (Approved Draft 1971). At a minimum, whenever there exists the possibility of a conflict of interest, counsel should reveal it to his client. ABA Code of Professional Responsibility and Canons of Judicial Ethics, Disciplinary Rule (DR) 5-105 (C), adopted by SJC Rule 3:22, 359 Mass. 814

---

the court may exercise its discretion to pursue the inquiry with defendants and their counsel on the record but in chambers." *United States* v. *Foster*, 469 F.2d 1, 5 (1st Cir. 1972). In camera consultation would be appropriate, for example, if disclosures of privileged lawyer-client communications were threatened.

[10] We decline to follow a rule that mandates reversal whenever the court's affirmative inquiry is missing from the record. *Campbell* v. *United States*, 352 F.2d 359, 361 (D.C. Cir. 1965).

(1972). *Commonwealth* v. *Leslie, supra* 657-658 (Liacos, J., concurring). *Commonwealth* v. *Geraway*, 364 Mass. 168, 175 (1973).

To be sure, we do not mean to say that counsel must always abstain from joint representation of criminal defendants.[11] "There are advantages and disadvantages in having separate counsel for each defendant or a single counsel for more than one. Joint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength against a common attack." *Glasser* v. *United States*, 315 U.S. 60, 92 (1942) (Frankfurter, J., dissenting). Indeed, error has been found where a judge overrode a criminal defendant's informed decision to proceed with joint representation. *United States* v. *Garcia*, 517 F.2d 272, 277 (5th Cir. 1975).[12] See *Finance Comm'n of Boston* v. *Mayor of Boston*, 370 Mass. 693, 697-698 (1976). Because we respect a defendant's right to have counsel of his choice, our concern with potential conflicts of interest will usually be satisfied when a defendant is fully apprised by the court and counsel of the intrinsic dangers of joint representation.

2. *Evidentiary Issues.*

Davis argues two exceptions to evidentiary rulings made by the trial judge. First it is claimed that the scope

---

[11] But see Geer, Representation of Multiple Criminal Defendants: Conflicts of Interest and the Professional Responsibilities of the Defense Attorney, 62 Minn. L. Rev. 119, 157-162 (1978); Cole, Time for a Change: Multiple Representation Should Be Stopped, 2 Nat'l J. Crim. Def. 149 (1976).

[12] But see *United States* v. *Dolan*, 570 F.2d 1177, 1181 (3d Cir. 1978); *United States* v. *Bernstein*, 533 F.2d 775, 788 (2d Cir.), cert. denied, 429 U.S. 998 (1976). We note that these cases, which uphold a trial court's authority to disqualify counsel from joint representation despite a defendant's waiver, appear incompatible with the Supreme Court's decision in *Faretta* v. *California*, 422 U.S. 806, 819 (1975). In *Faretta*, the Court articulated a Sixth Amendment right to self-representation in criminal cases. If defendants may forgo their rights to be represented by counsel altogether, it would seem a fortiori that they may waive the right to have counsel free from conflicts of interest. *United States* v. *Garcia*, 517 F.2d 272, 277 (5th Cir. 1975).

of cross-examination of Detective Maher was prejudicial-
ly limited when the judge refused to permit counsel to ask
the witness whether he had requested a quantitative
analysis of the six tin foils containing cocaine. We disa-
gree. The evidence in question had been brought out
previously in the trial during direct examination of Mah-
er. In addition, defense counsel later asked Maher essen-
tially the same question and received an answer. In this
context, we do not believe that the court's restraint of
Maher's cross-examination constitutes prejudicial error.
*Hicks* v. *H.B. Church Truck Serv. Co.*, 259 Mass. 272, 274
(1927). *Bishop* v. *Burke*, 216 Mass. 231, 233-234 (1913).
*Walker Ice Co.* v. *American Steel & Wire Co.*, 185 Mass.
463, 474 (1904).

Davis also challenges the admission of Maher's tes-
timony that the small manila envelopes seized in the raid
were used for the bagging of heroin. The introduction of
this testimony, it is argued, was erroneous because it
involved the defendant's propensity for committing
crimes other than those charged. See *Commonwealth* v.
*Stone*, 321 Mass. 471, 473 (1947).

We cannot accept the defendant's contention. Simply
because evidence may tend to show that the defendant
has committed another crime does not render it inadmis-
sible in all cases. Evidence of criminal conduct apart from
the crime charged is admissible if the evidence tends to
prove the existence of a plan or scheme, to prove knowl-
edge or state of mind, to prove a particular way of doing
an act, or to prove a particular skill. W.B. Leach & P.J.
Liacos, Massachusetts Evidence 302 (4th Ed. 1967). See
*Commonwealth* v. *Walker*, 370 Mass. 548, 568-569, cert.
denied, 429 U.S. 943 (1976). In the present case, the de-
fendant's intent to distribute narcotics was central to
several of the crimes charged in the indictment. Thus,
packaging material or drug paraphernalia were logically
and legally relevant to show the defendant was predis-
posed toward drug distribution, rather than, as he con-
tended, toward merely usage alone. See *Commonwealth*

v. *Dinnall*, 366 Mass. 165, 168 (1974); *Commonwealth* v. *Ellis*, 356 Mass. 574, 578 (1970); *Commonwealth* v. *Gill*, 2 Mass. App. Ct. 653, 657 (1974). Accord, Fed. R. Evid. 404 (b); *United States* v. *Young*, 573 F.2d 1137, 1140 (9th Cir. 1978); *United States* v. *Trevino*, 565 F.2d 1317, 1319-1320 (5th Cir.), cert. denied, 435 U.S. 971 (1978). Therefore, we find no error in the court's admission of Detective Maher's testimony concerning the probable use of the seized manila envelopes.

3. *Forfeiture of Bail and Cash Seized in Search.*

A final question remains regarding the disposition of the defendant's $1,500 cash bond and the $2,969 seized from the joint defendants' bedroom. Davis maintains that his bail was erroneously forfeited inasmuch as he never was in default. The Commonwealth concedes this point. Accordingly, we reinstate an earlier court order, one based on trial counsel's stipulation, that the defendant's cash bail be applied to the fine imposed by the court.

With respect to the money seized pursuant to the search warrant, we note that the trial court, with the defendant's apparent approval, credited this amount to the codefendant's fine of $2,969, pursuant to G. L. c. 276, § 3. Although there is some question as to the present status of these funds, the defendant no longer has any interest in this money, and, hence, he can make no claim to it.

4. *Conclusion.*

In summary, the judgments of conviction are affirmed with instructions to credit the defendant's $1,500 bail toward his outstanding fine.

*So ordered.*