NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-29                                      Appeals Court


   COMMONWEALTH  vs.  PETER J. UNITT, THIRD (and six companion
                          cases[1]).


                         No. 16-P-29.

    Middlesex.     December 7, 2016. - February 28, 2017.

             Present:  Cypher, Maldonado, & Blake, JJ.


Bail.  Forfeiture Proceeding.  Practice, Criminal, Restitution.
    Restitution.


    Indictments found and returned in the Superior Court
Department on September 23, 2010.

    A bail forfeiture proceeding was had before Sandra L.
Hamlin, J.


    Dennis M. Toomey for Peter J. Unitt, III.
    James E. McCall for Lee Peck Unitt.
    Melissa Weisgold Johnsen, Assistant District Attorney, for
the Commonwealth.


    BLAKE, J.  The married defendants, Peter J. Unitt, III

(Peter), and Lee Peck Unitt (Lee), jointly operated a law office

in Woburn prior to their arraignment on numerous crimes related

_____

    [1] The companion cases are against Lee Peck Unitt.

to the theft and embezzlement of their clients' funds.[2] Their adult children, Jade Unitt (Jade) and Peter Unitt, IV (Peter, IV), posted bail on their behalf.[3] Neither defendant defaulted, and each subsequently was convicted of a subset of the charged crimes. This appeal presents the question whether, where no default occurred, a judge of the Superior Court had the authority to order that the bail posted on the defendants' behalf be forfeited and applied toward the restitution they owed. Because we conclude that under the circumstances presented by this case, the judge did not have such authority, we reverse the order of forfeiture.

Background. On October 18, 2010, both Peter and Lee were arraigned on multiple indictments in the Superior Court, at which time bail was set at $50,000 cash for each defendant. On December 9, 2010, Jade, the defendants' adult daughter, posted bail on behalf of Lee and was named as surety on the recognizance. On February 16, 2011, Peter, IV, the defendants' adult son, posted bail on behalf of Peter and was named as surety on the recognizance. Both recognizance forms, which are identical, warn the surety of the risk of forfeiting the money

---

[2] The office did business as the Crest Group, LLC. Peter was a lawyer, and Lee, who is not a lawyer, maintained the books and records, managed the office, and communicated with clients.

[3] As the defendants and the sureties share a surname, we refer to them by their first names for ease of reference.

posted for bail if the defendant defaults, but list no other potential risks of forfeiture.

Between their arraignments in 2010, and their convictions in 2013, each of the defendants appeared for court as required under the recognizances, thereby satisfying the conditions of their bail. In April of 2013, a jury convicted Lee of four counts of larceny and one count of embezzlement. Thereafter, the judge adjudicated her a common and notorious thief. On May 6, 2013, the judge sentenced her to consecutive terms of two years to two years and one day on the larceny convictions, ten years of probation to run from and after the committed sentences on the embezzlement conviction, and, for being a common and notorious thief, a twenty-year term of probation to run concurrent with the committed sentences. In July of 2013, Peter pleaded guilty[4] to one count of embezzlement by a fiduciary and was sentenced to two years in the house of correction, 120 days to serve, with the balance suspended for four years. The judge also ordered the defendants to pay restitution, jointly and severally, to three victims.[5]

---

[4] He pleaded guilty pursuant to North Carolina v. Alford, 400 U.S. 25 (1970)

[5] The defendants were ordered to pay $190,729.56 to Susie Lui; $538,645.03 to Kevin Walsh and Susan Walsh; and $69,987.05 to Delores Walsh.

Over three dates in June and November, 2013, and January, 2014, the judge conducted hearings to determine whether the bail posted on behalf of Lee and Peter should be assigned to the probation department to be applied to the restitution order. Although no witnesses testified on those dates,[6] several documentary exhibits were admitted in evidence. Jade submitted an affidavit stating that the bail money was comprised of two loans, one from her mother's sister and one from her father's aunt. She also averred that "[n]either of the funds used to bail my parents out belong to my parents, myself, or my brother." The other documents included the recognizance forms, a letter from a victim's civil attorney as to the restitution amount still owed, a notarized letter from Peter's aunt (with attached bank statements and record of funds transferred) stating that the funds sent for Peter's bail were a loan to Jade, and Jade's bank statement indicating a $50,000 deposit in Jade's account from a bank in Singapore.[7]

On January 30, 2014, the judge issued a memorandum of decision finding that "the credible evidence is that the $50,000 posted each by [Lee and Peter] were in effect loans which became the property of [Lee and Peter] with Jade Unitt serving as the

_____

[6] It appears from the record and the judge's decision that Jade had notice of the June, 2013, hearing, while Peter, IV, had notice of the November, 2013, hearing.

[7] It is undisputed that Lee's sister resides in Singapore.

conduit since her parents were in jail and unable to physically post the bail." In reaching her finding as to Lee, the judge acknowledged Jade's affidavit and the bank record showing a deposit from Singapore, but relied upon her memory of Lee's trial testimony[8] and the lack of affidavits from either Lee or her sister, in concluding that the loan was a sham. In so finding, the judge acknowledged that she did not have a transcript of the trial before her.[9] As for Peter's bail, the judge made a passing reference to the notarized letter of Peter's aunt, but again relied on the lack of an affidavit from Peter, himself, denying that the money was his.

Having found that the loans were shams and that the bail money actually belonged to Lee and Peter, rather than returning the money to the sureties, the judge ordered that the bail of each defendant be forfeited and applied equally to the restitution owed each victim. The defendants appeal, arguing that bail must be returned to the sureties when, as here, the conditions of bail have been satisfied.[10]

---

[8] The judge recalled Lee testifying to her own wealth (that had been deposited off-shore), "and that at any time she could call her sister in Singapore and her sister would send [Lee's] money to her."

[9] Nor have any trial transcripts been provided by the defendants on appeal.

[10] The Commonwealth argues that the defendants lack standing to challenge the bail forfeiture. The recognizance forms

Discussion.  "The essential purpose of bail is to secure the presence of a defendant at trial to ensure that, if the defendant is guilty, justice will be served."  Querubin v. Commonwealth, 440 Mass. 108, 113 (2003), and cases cited.  "In posting bail for the principal, the surety in effect 'guarantees that the principal will appear and answer.'"  Commonwealth v. Bautista, 459 Mass. 306, 311 (2011).  To effect this guarantee, under the recognizance agreement, both the surety and the defendant are liable, jointly and severally, to the Commonwealth for the dollar amount specified in the terms of the release if the defendant fails to appear in court when his presence is required, i.e., he defaults.  General Laws c. 276, § 71, also provides the judge the authority to order the funds of the surety and the principal forfeited when a default enters.  See Commonwealth v Bautista, supra.[11,12]

---

provide, however, that the defendant "will be liable, jointly and severally if a surety has been required, to the Commonwealth of Massachusetts for the dollar amount specified in the terms of release."  The defendants accordingly have an interest in the satisfaction of the terms of the recognizance agreements, including the return of the bail to the sureties.

[11] General Laws c. 276, § 71, provides, in relevant part:

"If a person under recognizance to appear and answer or to prosecute an appeal in a criminal case fails to appear according to his recognizance, . . . his default shall be recorded, his obligation and that of his sureties forfeited, and process issued against them or such of them as the prosecuting officer directs."

If, on the other hand, a defendant appears as required, G. L. c. 276, § 68, provides that the bail "shall" be returned to the surety.  Specifically, § 68 states:

> "Bail in criminal cases may be exonerated at any time before default upon their recognizance by surrendering their principal into court or to the jailer in the county where the principal is held to appear, or by such voluntary surrender by the principal himself, and in either event, in all cases where bank books, money or bonds are deposited by the surety, the court shall thereupon order the bank books, money or bonds so deposited to be returned to the surety or his order, and to be reassigned to the person entitled thereto."

The language is plain and unambiguous, and mandates the return of the bail to the surety when the defendant appears without default.  See Commonwealth v. Brown, 431 Mass. 772, 775 (2000) (plain language of statute controls).

Here, relying on her finding that the bail actually belonged to the defendants and was not comprised of loans paid by the sureties, the judge issued an order of forfeiture directing that those funds be applied to the restitution owed by the defendants.  The order should not have issued.  The defendants here undisputedly were in full compliance with the conditions of bail.  Under the mandatory language of the statute, the judge was required to order the return of the bail

---

[12] Apart from default, forfeiture also may be appropriate in certain other circumstances not relevant here.  See G. L. c. 94C, § 47 (money furnished for controlled substance or to facilitate violation of drug laws); G. L. c. 273, § 18 (child support).

money to the sureties.  In so doing, the judge was not permitted to inquire about the sufficiency or nature of the sureties, so long as the surety deposited an amount equal to that of the bail required.  See G. L. c. 276, § 57.

Here, of course, a fraudulent suretyship was suspected.  We agree that proof of a fraudulent suretyship would provide a basis for forfeiture and attachment.  In that instance, a motion by the Commonwealth and an offer of proof, followed by an evidentiary hearing, would be an appropriate course of action to make the required findings to support denying the return of bail to a surety.  In this case, however, the judge looked beyond the recognizance agreement and made findings of fact without receiving an offer of proof from the Commonwealth or holding an evidentiary hearing.  Instead, she relied on her unrefreshed memory of the trial, an unopposed affidavit that she discredited, unchallenged financial records that she also discredited or ignored,[13] and the absence of certain affidavits, in concluding that the defendants engaged in "extremely devious, callous and nefarious behavior."  While that description is doubtless true, without concrete evidentiary support, the

_____

[13] The judge either apparently ignored or discredited documentation from Citizens Bank showing a wire transfer of $50,000 to Jade from Lee's sister one day prior to when Jade posted Lee's bail, and documentation from Merrill Lynch and Bank of America showing a wire transfer of $50,000 one day prior to when Peter, IV, posted Peter's bail.

judge's findings are fatally flawed.  See generally <u>Commonwealth</u> v. <u>Nattoo</u>, 452 Mass. 826, 828 n.1 (2009), quoting from <u>Commonwealth</u> v. <u>Haggerty</u>, 400 Mass. 437, 442 (1987) ("Disbelief of testimony is not the equivalent of proof of facts contrary to that testimony").  Accordingly, the forfeiture order must be reversed.[14]

The Commonwealth, citing <u>Commonwealth</u> v. <u>Davis</u>, 376 Mass. 777 (1978), nevertheless contends that a judge has the inherent authority to hold or attach deposited funds in its custody postconviction and apply them to a court-ordered fine or to restitution once the purpose of the bail has been fulfilled. First, the argument requires a threshold finding that the money, in fact, belongs to the defendant rather than the surety.  As we have already concluded, that fact was not established here. Second, in <u>Davis</u>, the Commonwealth conceded that the bail was erroneously forfeited as the defendant was never in default. <u>Id</u>. at 789.  Trial counsel there also stipulated that the cash bail be applied to the court-ordered fines.  <u>Ibid</u>.  No such concession or stipulation exists here.[15]

---

[14] We decline to reach the question whether bail money, once determined to belong to a defendant rather than the surety, can be automatically forfeited and applied to restitution owed by a defendant absent a defendant's agreement.

[15] The Commonwealth's argument that the statute does not address whether or how the posted bail money is to be returned is equally meritless.  Its citation to support the point, to

Conclusion.  The order forfeiting the bail posted by Jade as surety for Lee, and by Peter, IV, as surety for Peter, is reversed.  The clerk's office shall return the bail to the sureties.[16,17]

So ordered.

---

G. L. c. 276, § 70, concerns a situation wherein "bail are unable without their fault to surrender their principal."  See Commonwealth v. Bautista, 459 Mass. at 314.  That is not the situation here as no default entered.

[16] Because we reverse the forfeiture order, we need not address the defendants' alternative claim seeking a remand for a full evidentiary hearing.  Moreover, any claim that the defendants have advanced regarding the amount of restitution ordered is waived, as the defendants did not appeal from the restitution order.

[17] We observe that the victims are not without remedies, as each defendant is jointly and severally liable for the restitution established and ordered to be paid.  Civil actions, both pending and concluded, also have provided some degree of restitution to the victims.