COMMONWEALTH *vs.* JOSEPH PINGARO.

No. 96-P-920.

Suffolk. March 13, 1997. - December 15, 1997.

Present: PERRETTA, LAURENCE, & LENK, JJ.

*Practice, Criminal,* Plea, New trial, Judicial discretion. *Constitutional Law,* Plea.

A criminal defendant did not establish, in support of his 1994 motion to withdraw his 1979 guilty pleas, an articulable and credible claim that he did not receive a constitutionally adequate plea colloquy, and therefore the Commonwealth had no burden of proving the existence of a contemporaneous record establishing that the plea was knowing and voluntary: a Superior Court judge did not abuse her discretion in ruling on the credibility of the defendant's submission and the judge's denial of the defendant's motion was not manifestly unjust. [47-55]

INDICTMENTS found and returned in the Superior Court Department on February 21, 1978.

A motion to withdraw guilty pleas, filed on October 17, 1994, was heard by *Elizabeth Bowen Donovan,* J.

*Francis J. Hurley* for the defendant.

*John P. Zanini,* Assistant District Attorney, for the Commonwealth.

LAURENCE, J. Joseph Pingaro has appealed from a Superior Court judge's order denying his October, 1994, motion to withdraw guilty pleas he offered, and on which he was convicted and sentenced, in March, 1979. Pingaro filed this motion, over fifteen years after his guilty pleas, only after he pleaded guilty in 1993, in the United States District Court for the District of Massachusetts, to charges of extortion, witness tampering, obstruction of justice, and perjury (five counts), following which he received an enhanced Federal sentence based, in part, upon

his 1979 State convictions.[1] Because no transcript of his guilty plea proceedings has survived, Pingaro asserts that the Commonwealth cannot establish that he entered his 1979 pleas voluntarily and knowingly and that he should consequently receive a new trial. We affirm the denial of his motion.

A Massachusetts grand jury indicted Pingaro in February 1978, for conspiracy to distribute cocaine, two counts of unlawful distribution of cocaine, and unlawful possession of a handgun. The police reports and the evidence presented to the grand jury revealed that Pingaro had been caught red-handed in mid-January, 1978, participating with two codefendants in the sale of four ounces of cocaine to an undercover police officer, after having been involved the previous day in the sale of one ounce of cocaine to the same officer. Pingaro had also displayed to the officer a pistol that he said he used to protect drug transactions.

Following Pingaro's pleas of not guilty to the indictments, his case was on the trial list for ten months; his trial date was set, then continued, three times with his agreement; and, by his own acknowledgment,[2] his case was ultimately resolved after extensive plea negotiations by a "package deal." The "deal" resulted in guilty pleas by all three defendants and extremely favorable dispositions for Pingaro and his colleagues.[3] At all relevant times Pingaro was represented by private counsel of his own choosing.

The docket sheets reflect that all the guilty pleas were accepted by Boston Municipal Court Judge Richard Banks, who was sitting in the Superior Court by designation, only "after hearing." The affidavits supporting Pingaro's motion for withdrawal of his guilty pleas concede that a "plea hearing" occurred (although he now denigrates it as "extremely brief, lasting no more than five minutes"). However, because Pingaro

---

[1]These facts and others relating to the procedural background are taken from unchallenged findings by the motion judge on Pingaro's October, 1994, motion for withdrawal of guilty pleas and from the docket sheets, except as otherwise stated.

[2]The acknowledgment appeared in Pingaro's April 18, 1995, affidavit in support of his motion for withdrawal of guilty plea.

[3]Pingaro could have received a total of twenty years in State prison on the distribution indictments under the statute then in effect, G. L. c. 94C, § 32, inserted by St. 1971, c. 1071, but instead received two concurrent two-year sentences in a house of correction; the conspiracy indictment was filed; and the firearm indictment was dismissed.

never requested a copy of the hearing transcript, the stenographer's notes of the hearing were lawfully destroyed after six years, in the ordinary course of business, pursuant to S.J.C. Rule 1:12, 382 Mass. 717 (1981).

Within three weeks of his guilty pleas, Pingaro filed, through his trial attorney, a motion to revise his sentences on the distribution counts, on the ground that his codefendant, who was the actual supplier of the drugs in the first transaction, was more culpable, yet had received a lesser sentence on his guilty plea than had Pingaro, a mere "liaison" between seller and buyer with a less extensive criminal record. In May, 1979, Judge Banks reduced Pingaro's sentences to one year to be served, the balance suspended and three years of probation. Judge Banks subsequently died. In November, 1982 (while the stenographer's notes of his plea hearing were still intact), Pingaro, having served his sentence and completed his probation without incident, successfully petitioned a different judge to seal his criminal record because of a job opportunity. His next court experience came eleven years later, in connection with the Federal charges discussed earlier.

Pingaro's October, 1994, "motion for withdrawal of guilty plea and allowance of a new trial" was supported solely by his own affidavit. It alleged that Judge Banks had failed in March, 1979, to provide Pingaro with any colloquy whatsoever, and specifically recited that the judge had failed (a) to inform him of the several constitutional rights he would be waiving by pleading guilty; (b) to inquire whether he was under the influence of drugs or alcohol or otherwise incapable of making a knowing and intelligent decision to change his plea; (c) to inform him of the essential elements of the crimes to which he was pleading guilty; or (d) to determine whether Pingaro had received adequate and effective assistance of counsel. Pingaro also claimed that there was no evidence presented at the plea hearing linking him to those crimes.

On April 10, 1995, the Commonwealth filed its opposition to Pingaro's motion, stressing that Pingaro's affidavit was not credible; that Pingaro had not contended that he was in fact unaware of the rights he waived when he pleaded guilty or was in fact then under any improper or disabling influence; and that Pingaro had failed to make any specific claim of ineffectiveness of counsel. The Commonwealth maintained that, under the circumstances, Pingaro's bald assertions were not sufficient to

place the burden on the Commonwealth of establishing that Pingaro's presumptively regular guilty pleas had been constitutionally valid.

On April 11, 1995, one day after the Commonwealth's opposition, Pingaro filed and served an affidavit from his cousin, Peter Modica (who was also his trial attorney's cousin), in which Modica averred that he had been in the courtroom at Pingaro's "extremely brief" plea hearing and that Judge Banks had never advised Pingaro of any rights he was waiving by pleading guilty. Eight days after the Commonwealth's opposition, on April 18, 1995, Pingaro submitted his own "supplementary affidavit." In it he asserted (without indicating why it had taken him until then to raise such issues) that his guilty pleas had been the product of his attorney's "pressure" to "go along" with an "all or nothing package deal" encompassing all the defendants. (Pingaro described the alleged "pressure" as the need to help out a codefendant whose wife was dying of cancer.) The supplementary affidavit also charged that Pingaro's attorney had a "conflict of interest" because he also represented one codefendant, had "previously" represented the other, and had "engaged in plea negotiations" on behalf of all the defendants. The attorney had also (the affidavit claimed, without any specification of how the omitted explanations would have affected Pingaro's pleas) never explained "the potential for a conflict of interest"; or Pingaro's "possible options . . . in defending the case"; or "the possibility of seeking a severance for a separate trial"; or "that [Pingaro] could have challenged the validity of the conviction."

On April 25, 1995, a nonevidentiary hearing on Pingaro's motion to withdraw his pleas was held, after having been continued from April 12, 1995, the originally scheduled date. The motion judge refused Pingaro's request to present live testimony from Pingaro's cousin as a purported eyewitness to the 1979 plea proceedings but did accept a "supplementary affidavit" from the cousin. That affidavit represented that Pingaro had "no real criminal record" when he pleaded guilty in 1979, at an "extremely brief . . . five minute hearing"; that Pingaro had been "confused and unsure of himself," had been "very reluctant" to plead guilty, and was immediately "upset about making the plea"; and that the judge had given no explanation or advice to Pingaro at the hearing about any rights he was waiving. The affidavit contained no allegations regarding the

supposed shortcomings of counsel raised in Pingaro's own supplementary affidavit.

At the hearing on the plea withdrawal motion, Pingaro's counsel presented a simple argument relying on *Commonwealth v. Foster*, 368 Mass. 100 (1975): Pingaro's affidavits established his plea proceeding had been fatally inadequate, and the Commonwealth could not sustain its burden of demonstrating by a contemporaneous record that his guilty pleas had been knowing and voluntary. Counsel for the Commonwealth reiterated that Pingaro's motion and affidavits were so untimely, conclusory, and suspect as to be entitled to no credit, and that under the circumstances the Commonwealth had no burden to reconstruct the plea proceedings or otherwise justify the validity of Pingaro's guilty pleas because Pingaro's papers had failed to present a credible claim of error triggering such a burden.[4]

The motion judge rejected the allegations in the affidavits submitted by Pingaro, whom she characterized as "a convicted perjurer." The judge found Pingaro's belated claims of ineffective assistance of counsel to be "disingenuous" as well as contradicted by the record, which demonstrated that Pingaro's counsel had successfully obtained "a fairly light sentence" for him in return for his plea, despite the fact that Pingaro "was more culpable" in the drug transactions than the jointly represented codefendant who received the same sentence.[5] The judge did not, however, address the Commonwealth's principal argument, that Pingaro had failed to carry his burden as a new trial movant of coming forward with credible factual assertions to support his challenge to the validity of his guilty pleas beyond his self-serving, conclusory affidavits. Instead, the judge ac-

[4]The Commonwealth asked the judge to ignore the criticisms of counsel raised in Pingaro's belated supplementary affidavit on the ground that they essentially constituted new grounds for relief that were waived by Pingaro's failure to have included them in his original motion. See Mass.R.Crim.P. 30(c)(2), 378 Mass. 901 (1979). Since the claims of ineffectiveness of counsel could have been raised at the time of his original motion (which challenged only the purported absence of any colloquy), the Commonwealth is correct. See *Commonwealth* v. *Duest*, 30 Mass. App. Ct. 623, 628-629 (1991) *(Duest II)*. That the judge nonetheless responded to that supplementary affidavit (rejecting it as "disingenuous") is not sufficient to claim an exception to the rule of waiver. See *Commonwealth* v. *Layne*, 386 Mass. 291, 297 (1982).

[5]Pingaro's greater culpability arose not merely because of his brandishing of a weapon and boast of being the protector of the drug transactions, but especially because it had been he who assured the undercover agent of his alternative sources of drug supplies that facilitated the second controlled buy.

cepted the Commonwealth's subsidiary contention, that the contemporaneous extant record warranted the inference that Pingaro's pleas were knowing and voluntary. The judge found that, though reconstruction was difficult,[6] the record could be reconstituted sufficiently to conclude that there was no substance to Pingaro's attack on his pleas.

The judge found particularly significant the following facts (none of which Pingaro challenges): Pingaro was continuously represented by counsel for over a year prior to entering his guilty pleas, during which time counsel filed various discovery motions and obtained the grand jury minutes that set forth Pingaro's active participation in the drug transactions exposed by the undercover police work; Pingaro had thrice agreed to a trial date over an eight-month period, which had been thrice continued with his consent; his attorney had negotiated a very favorable plea bargain; Pingaro acknowledged, and the docket showed, that there had in fact been a hearing on his offer to plead guilty and that at the hearing the police reports had been read setting forth in specific detail Pingaro's role in the crimes charged (which evidence the motion judge deemed sufficient to establish both a conspiracy and a joint venture to distribute cocaine as well as the firearms charge); Judge Banks was an experienced judge who sat extensively in the Superior Court and took many guilty pleas; and three weeks after the pleas Pingaro initiated proceedings to revise his sentence on the cocaine distribution convictions, during the course of which he gave no hint of dissatisfaction with either his guilty pleas or his counsel and additionally made a "knowing and intelligent" waiver of his separate motion to revise or revoke with respect to the conspiracy indictment and guilty plea.[7] Relying particularly on *Commonwealth* v. *Duest*, 26 Mass. App. Ct. 137, 146-147 (1988) (*Duest I*), the judge concluded that "[i]t is reasonable to infer

[6]The motion judge found that "[J]udge [Banks] is dead. The stenographer who discarded the notes [of the plea proceedings] and the prosecutor are unavailable and/or without any memory of the plea. Therefore the record is limited to the docket sheet, Chelsea police record, grand jury minutes, Pingaro's post-plea encounters with the court regarding these cases [i.e., his motion to revise his sentence and his petition to seal his criminal record] and the reasonable inferences to be drawn."

[7]Although the conspiracy charge was filed following Pingaro's guilty plea, it remained subject to reactivation at any time, including removal from the file for imposition of a sentence. See *Commonwealth* v. *Bianco*, 390 Mass. 254, 257 (1983).

from the evolving history of Pingaro's disposition of these cases that he made a knowing and intelligent waiver of his rights."

Pingaro's appeal to this court rests entirely on the premise that the reconstructed contemporaneous guilty plea record fails to demonstrate sufficiently the knowing and voluntary nature of his guilty pleas and on his contention that the judge committed error in allowing the Commonwealth to supplement that record with material not contemporaneous with the plea (specifically, his motion to revise his distribution sentence). Such supplementation is, he claims, expressly prohibited by *Commonwealth* v. *Foster*, 368 Mass. at 103, 108, and *Commonwealth* v. *Quinones*, 414 Mass. 423, 431-432 (1993).[8] We agree with the Commonwealth, however, that Pingaro's motion was correctly denied, whether or not the judge's reconstruction of the plea record passed muster under *Foster* and its progeny.[9]

---

[8]Pingaro's appeal also purports to challenge the judge's refusal to allow his cousin to testify at the hearing on his motion to withdraw his guilty pleas and the judge's "findings" as to the knowing and voluntary nature of those pleas as being unsupported by the record. His brief on both issues contains no citations to any authority to support his claims of abuse of discretion and (unsurprisingly, since his position is contrary to Massachusetts law, see *Commonwealth* v. *Stewart*, 383 Mass. 253, 259-260 [1981]) legal error, nor any specification of which findings are unsupported. His conclusory contentions on those issues are not properly before us because they constitute entirely inadequate appellate argument, contrary to Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See *Commonwealth* v. *Silva*, 401 Mass. 318, 329 n.12 (1987); *Commonwealth* v. *Gordon*, 407 Mass. 340, 350 (1990); *Commonwealth* v. *Taylor*, 32 Mass. App. Ct. 570, 580 (1992).

[9]We can, of course, affirm a correct ruling on a ground not relied on by the motion judge, so long as it is supported by the law and the record. See *Barry* v. *Commonwealth*, 390 Mass. 285, 299 n.18 (1983); *Commonwealth* v. *Signorine*, 404 Mass. 400, 403 & n.1 (1989); *Commonwealth* v. *Bennett*, 414 Mass. 269, 271-272 (1993); *Commonwealth* v. *Clermy*, 421 Mass. 325, 329-330 (1995). With respect to the validity of the judge's reconstruction of the record, we observe that it was in fact based almost exclusively on the "contemporary record" as defined by *Commonwealth* v. *Foster*, 368 Mass. at 108 n.6, relying on the docket sheets, the grand jury minutes, the police reports (which the prosecutor read at the plea hearing and which established the criminal charges against Pingaro, see *Commonwealth* v. *Soffen*, 377 Mass. 433, 441-442 [1979]; *Commonwealth* v. *Colantoni*, 396 Mass. 672, 679-682 [1986]), and "the evolving history of Pingaro's disposition of these cases," including defense counsel's discovery activity, the length of time the case was marked for trial, the agreed-to continuances, the extensive plea negotiations, and the favorable "deal" that was agreed to which resulted in the guilty pleas. The only post-plea matter considered in this regard by the judge was Pinga-

An attack on the validity of a guilty plea is properly made by and treated as a motion for a new trial pursuant to Mass.R. Crim.P. 30(b), 378 Mass. 900 (1979). *Commonwealth* v. *Huot*, 380 Mass. 403, 406 (1980). Like all such motions, it is addressed to the sound discretion of the motion judge. *Commonwealth* v. *Smith*, 381 Mass. 141, 142 (1980). *Commonwealth* v. *Fanelli*, 412 Mass. 497, 504 (1992). The judge's disposition of the motion will not be reversed unless it is shown to be an abuse of discretion that produces a manifestly unjust result. *Commonwealth* v. *Little*, 384 Mass. 262, 269 (1981). *Commonwealth* v. *DeMarco*, 387 Mass. 481, 484, 487 (1982). The judge may decide the motion solely on affidavits. *Commonwealth* v. *Stewart*, 383 Mass. 253, 259-260 (1981). The credibility, weight, and impact of the affidavits in support of the motion are entirely within the judge's discretion. He is not required to believe them even if they are undisputed. See *Commonwealth* v. *Grace*, 370 Mass. 746, 752 (1976); *Commonwealth* v. *Gould*, 413 Mass. 707, 716 n.9 (1992). Cf. *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986) (the same deference is accorded credibility determinations even if the motion judge did not preside at trial).[10]

In the specific context of a new trial motion based on a sup-

___

ro's effort, initiated three weeks after the plea hearing, to revise his sentence on the distribution charges (to match the more favorable sentence a codefendant had received) without mentioning any other alleged defect in his conviction and sentence. That motion to revise the judge thought a clear reflection of the knowing and voluntary nature of Pingaro's conduct at or about the critical time, particularly in conjunction with Pingaro's express waiver of his separate motion to revise or revoke with respect to the conspiracy offense. It is not at all clear that the consideration of such a single, "roughly contemporaneous," *Duest II*, 30 Mass. App. Ct. at 625, post-plea circumstance, so close in time to the plea itself as arguably to be essentially contemporaneous, violates the *Foster* principle. Compare *Duest I*, 26 Mass. App. Ct. at 139-140, 147-148 & n.12 (reliance on self-incriminating testimony at a codefendant's trial by a defendant who had pleaded guilty to participation in the same crime two weeks earlier held to be proper "in deciding whether there is an adequate record on which to validate the pleas"). We do not have to reach that issue, having rested our decision on another basis.

[10]"Affidavits are not conclusive of the facts even if no counter affidavits are presented. A judge is no more bound to accept as true an uncontradicted affidavit than to believe an uncontradicted witness," whether in civil or criminal proceedings. *Germain* v. *Raad*, 297 Mass. 73, 75 (1937). See *Commonwealth* v. *De Christoforo*, 360 Mass. 531, 543 (1971). Cf. *Commonwealth* v. *Pires*, 389 Mass. 657, 665-666 (1983); *Commonwealth* v. *Stanton*, 2 Mass. App. Ct. 614, 621-622 (1974).

posedly defective plea colloquy, a motion judge is not —
contrary to Pingaro's fundamental premise — required to afford
an evidentiary hearing or impose a burden of going forward on
the Commonwealth, much less grant relief, simply because the
defendant files an affidavit alleging that he never received a
plea colloquy and no transcript of the plea colloquy exists to
gainsay him. The mere unavailability of the transcript, through
no fault of the Commonwealth but rather as the result of
protracted delay in a defendant's attack on his guilty plea, does
not, in and of itself, rebut the normal presumption of regularity
accorded the earlier proceedings; nor does it raise the inference
that a guilt-pleading defendant was not advised of his constitu-
tional rights. *Commonwealth* v. *Gonzales*, 43 Mass. App. Ct.
926 (1997). *Parke* v. *Raley*, 506 U.S. 20, 29-31 (1992).[11] The
relevant analysis in such situations was succinctly stated in
*Commonwealth* v. *Fanelli*, 412 Mass. at 504:

> "A judge may grant such a motion [as Pingaro's] only 'if
> it appears that justice may not have been done' . . . .
> 'Judges are to "apply the standard set out in Mass.
> R.Crim.P. 30(b) [as to whether justice may not have been
> done] rigorously" . . . and should "only grant a postsen-
> tence motion to withdraw a plea if the defendant comes
> forward with a credible reason which outweighs the risk
> of prejudice to the Commonwealth." ' "

Cf. *Commonwealth* v. *McWhinney*, 20 Mass. App. Ct. 444, 446
& n.4 (1985) (The Commonwealth has no burden to show the
sufficiency of a reconstruction of trial proceedings in the absence
of stenographic notes, which had been stolen, until "the
defendant has come forward with an articulable claim" of
reversible trial error.)

A defendant's naked claim that he did not receive a
constitutionally adequate guilty plea colloquy does not automati-
cally thrust upon the Commonwealth the burden of proving the
existence of a contemporaneous record establishing that the plea
was entered knowingly and voluntarily. Rather, the initial burden

---

[11]As an authoritative gloss on *Boykin* v. *Alabama*, 395 U.S. 238 (1969),
which is the basis for this Commonwealth's doctrine with respect to guilty
plea procedures, see *Commonwealth* v. *Quinones*, 414 Mass. at 414, 423, 431-
432. *Parke* v. *Raley*, which Pingaro conspicuously fails to cite, is on point
with respect to the evidentiary consequences of the absence of a colloquy

is on the moving defendant to present some articulable reason which the motion judge deems a credible indicator that the presumptively proper guilty plea proceedings were constitutionally defective, above and beyond a movant's "credulity straining" contentions regarding "questions the judge did *not* ask" almost sixteen years earlier, *Commonwealth* v. *Duest*, 30 Mass. App. Ct. 623, 627 (1991) *(Duest II)*, and reliance upon the mere nonexistence of a transcript of the plea proceedings.[12]

In light of the judge's total disbelief of Pingaro's affidavits, Pingaro failed to satisfy his burden of surmounting that initial, mandatory threshold of credibility.[13] The denial of his motion was accordingly correct on that basis alone, as was the judge's

[12]Pingaro relies entirely on statements taken out of context from *Commonwealth* v. *Foster*, 368 Mass. 100, *Commonwealth* v. *Quinones*, 414 Mass. 423, and *Duest I*, 26 Mass. App. Ct. 137, for the supposed rule of automatic burden on the Commonwealth. Those cases do not, however, support his position, but rather reflect the new trial principles just discussed. In *Foster*, the defendant contended, and the extant, complete trial transcript confirmed, that there had been no inquiry whatsoever by the judge as to the knowing and voluntary nature of the guilty plea, a patent defect which the Commonwealth was compelled to acknowledge, 368 Mass. at 100-102, and one which amply satisfied the defendant's obligation to come forward with a credible and articulable claim of error. See *Commonwealth* v. *Fernandes*, 390 Mass. 714, 716-718 (1984); *Commonwealth* v. *Correa*, 43 Mass. App. Ct. 714, 716-717 & n.4 (1997) (transcript of colloquy existed and showed no adequate inquiry by judge). In *Quinones*, the defendant had, unlike Pingaro, attempted to obtain a copy of the relevant transcript within a few months after his plea (unsuccessfully, because the stenographer's car containing her notes of the plea proceeding was stolen), which enhanced the plausibility of his claim that his guilty plea had been the result of coercion and improper advice by his trial counsel, whom he had tried to discharge but was compelled to rely upon at the plea stage because the judge had denied his request for the appointment of new trial counsel. 414 Mass. at 423-424, 436. In *Duest I*, the defendant, unlike Pingaro, presented affidavits from his counsel and the court reporter reflecting his diligent efforts to locate the stenographic notes of his plea proceedings (which appear to have been destroyed) so as to support his contention that he was never advised of and never understood the mens rea requirement for the crime to which he pleaded guilty on the advice of his lawyer, who had a conflict of interest. On the strength of those factual showings, the court noted that the "defendant has shown a basis for challenging his pleas" sufficient to put the burden on the Commonwealth of establishing their constitutional validity. 26 Mass. App. Ct. at 141-142 & n.6, 144 & n.7.

[13]Additionally supporting the imposition on Pingaro of an initial burden of persuasion is the procedural posture of his case, a variant example of a collateral attack on a guilty plea in a "sentencing enhancement context." See *Commonwealth* v. *Quinones*, 414 Mass. at 432-433 n.7; *Commonwealth* v. *Correa*, 43 Mass. App. Ct. at 716; *Commonwealth* v. *Gonzales*, 43 Mass. App.

implicit subsidiary ruling that Pingaro had failed to present any substantial issue requiring an evidentiary hearing. The judge's exercise of discretion in repudiating Pingaro's factual assertions as unworthy of belief was amply supported by the relevant circumstances revealed by "a survey of the whole case." *Commonwealth* v. *Little*, 384 Mass. at 269, quoting from *Sharpe, petitioner*, 322 Mass. 441, 445 (1948).[14]

Chief among the circumstances negating the credibility of Pingaro's unlikely tale that he received no plea colloquy whatsoever were the very ones emphasized by the motion judge. Uppermost in depriving Pingaro's assertions of probative force

---

Ct. at 926. It is perfectly clear from the background and timing of Pingaro's motion and the contents of his original submission that, despite several opportunities to do so, he registered no complaints about his plea colloquy and never sought to withdraw his pleas until he became aware, over fifteen years after the fact, of the collateral consequence of sentencing enhancement under Federal law based upon his prior State convictions. Upon questioning by the motion judge, defense counsel admitted as much at the hearing on his motion to withdraw his guilty pleas. Nor did his motion claim or even intimate that he had in fact been unaware of the rights he was waiving by pleading guilty, or had for any reason been unable to understand what occurred at the plea hearing, or had actually been subjected to any form of coercion or threats. Compare note 18, *infra*. Pingaro thus failed to contend, let alone demonstrate, that it would have made any difference to him in deciding about a plea if the judge had engaged in the fullest conceivable guilty plea colloquy. See *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. 491, 499 (1985); *Commonwealth* v. *Lamrini*, 27 Mass. App. Ct. 662, 664 (1989); *Commonwealth* v. *Russell*, 37 Mass. App. Ct. 152, 157 (1994). Compare *Commonwealth* v. *Correa, supra* at 718-719. Much less did he make any suggestion that he ever had any defense to the charges against him, i.e., "a triable case." *Commonwealth* v. *Fernandes*, 390 Mass. 714, 720 (1984). In such a virtual "sentencing enhancement context," both Federal and State authorities recognize "that the burden is on the defendant . . . to rebut the presumption that [his] prior convictions [on his guilty pleas] are valid." *Commonwealth* v. *Quinones*, 414 Mass. at 433 n.7, citing to *Parke* v. *Raley*, 506 U.S. at 29-32. We observe that neither *Commonwealth* v. *Quinones* nor *Commonwealth* v. *Foster*, 368 Mass. 100, upon which Pingaro principally relies for automatically placing the burden of validating plea proceedings on the Commonwealth, were cases that could be characterized as arising in a sentencing enhancement context.

[14]Even were we to assess the strength of Pingaro's assertions independently with no deference to the motion judge, because of necessity the motion was heard by a judge who did not preside at the 1979 proceeding, see *Commonwealth* v. *Curtis*, 417 Mass. 619, 626 (1994), we would find no error or abuse of discretion in the judge's determinations because we, too, discern no credibility in Pingaro's suspiciously tardy and essentially perfunctory allegations.

was his status as an admitted multiple perjurer, as well as a convicted felon on other charges involving dishonesty in judicial proceedings. See G. L. c. 233, § 21; *Commonwealth* v. *Whitman*, 416 Mass. 90, 93 (1993).[15] Reinforcing the damning inference against Pingaro's good faith and credibility was his unexplained fifteen and one-half year delay in bringing his motion, despite his necessary possession of all relevant facts from the date he entered his guilty pleas, the known applicability of the requirements of the Supreme Court's decision in *Boykin* v. *Alabama*, 395 U.S. 238 (1969), in Massachusetts for over six years prior to those pleas, and Pingaro's several opportunities to raise the issue while the plea transcript was still in existence. See *Huot* v. *Commonwealth*, 363 Mass. 91, 99-101 (1973). Compare *Commonwealth* v. *Quinones*, 414 Mass. at 435; *Commonwealth* v. *Reid*, 8 Mass. App. Ct. 888, 888 & n.1 (1979); *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21-22 (1986); *Duest I*, 26 Mass. App. Ct. at 148; *Duest II*, 30 Mass. App. Ct. at 627, 629. Cf. *Malone* v. *United States*, 299 F.2d 254, 256 (6th Cir. 1962), cert. denied, 371 U.S. 863 (1963); *Oksanen* v. *United States*, 362 F.2d 74, 79 (8th Cir. 1966); *LaClair* v. *United States*, 241 F. Supp. 819, 824 (N.D. Ind. 1965) (the unexplained lapse of many years between motion and plea is a firm basis for doubting a defendant's contentions in Federal proceedings).[16]

The police report read into the record at the plea hearing, and detailing the defendant's active role in arranging, executing, and protecting the drug transactions, entitled the judge to reject Pingaro's implied ignorance of the offenses charged and the claimed lack of evidence linking him to the crimes to which he admitted guilt. The scheduling and rescheduling of jury trial dates over the course of eight months gave the lie to his suggestion of

---

[15]Pingaro's disingenuousness was underscored when, in his motion for reconsideration of the judge's order denying his motion to withdraw guilty plea, he conceded that the judge could properly discredit his affidavit because of his perjury convictions, but insisted that it was an abuse of discretion for the judge to disregard the affidavit "of an independent and unbiased witness, Peter Modica." The judge was, of course, entitled to disbelieve that infirm affidavit of Pingaro's close relative. See *Commonwealth* v. *Toney*, 385 Mass. 575, 580 (1982).

[16]Another circumstantial indicium of unreliability in Pingaro's motion was his total failure to have demonstrated any diligence or even any efforts to obtain or reconstruct the record of the plea proceedings by seeking affidavits from the still-living court stenographer, prosecutor, and defense counsel as to their recollections or the contents of their files. Contrast *Duest I*, 26 Mass. App. Ct. at 142 & n.6.

unawareness of his right to jury trial. The active and productive efforts of his privately retained counsel over the course of many months in plea negotiations and in ultimately obtaining a relatively light sentence for Pingaro undercut his affidavit's insinuation of dissatisfaction with counsel's effectiveness and ignorance of counsel's competence.

Even if the new claims regarding his counsel's supposed conflict of interest and "pressures" on Pingaro to plead guilty, contained in Pingaro's "supplementary affidavit," were not subject to waiver (see note 4, *supra*), the judge could, as she did, justly dismiss them as "disingenuous," filed as they were over seven months after his motion and original supporting affidavit, one week after the Commonwealth's opposition had pointed out his motion's failure to allege any coercion or ineffectiveness of counsel but only the purported lack of a colloquy, and one day before the scheduled hearing on the motion. Apart from the suspect nature of their timing and their inherent implausibility (in light of the favorable disposition counsel achieved and Pingaro's lengthy, presumably satisfactory retention of him), the uncorroborated allegations of the supplementary affidavit were properly rejected by the judge because they presented no colorable, much less substantial, issue of either coercion[17] or conflict of interest. See *Commonwealth* v. *Martinez*, 425 Mass. 382, 389 (1997); *Duest I*, 26 Mass. App. Ct. at 149 (no conflict of interest will be inferred simply from defendant's allegation regarding the existence of joint representation). Contrast *Commonwealth* v. *Fernandes*, 390 Mass. at 719-720 (defendant who had no criminal record presented affidavits tending to show in circumstantial detail that his unprepared counsel had coerced him into pleading guilty by telling him he had no defense and would be sexually molested

---

[17]The only suggestion of involuntariness in Pingaro's supplementary affidavit was his distinctly unpersuasive assertion that he faced not "coercion" or "threats" but "considerable pressure" from his counsel and codefendant to "go along" with a "package deal" because of the desire of a codefendant to get a favorable sentence "because his wife was ill with cancer." The affidavit also alluded to counsel's failure to explain "possible options" Pingaro might have had in defending the case or to inform him of "the possibility of seeking a severance for separate trial," but does not describe what possible defenses he might in fact have had or how a severance could have benefited him. We also note that these various assertions raise facts not apparent on the face of the record and as to which Pingaro clearly had the burden of proof. See *Commonwealth* v. *Hubbard*, 371 Mass. 160, 168-169 (1976); *Commonwealth* v. *Brown*, 378 Mass. 165, 171 (1979).

in State prison if he failed to plead guilty so as to receive a
house of correction sentence, after counsel had failed to bring a
potentially meritorious motion to suppress the incriminating
evidence).

Finally, the motion judge's reliance upon Judge Banks'
reputation and plea-taking experience as subversive of Pinga-
ro's claims seems to have been founded upon the judge's
personal knowledge and is not reflected in the record (except
for the conceded fact that a plea hearing of some sort did oc-
cur). It was, nonetheless, a relevant factor, compare *Com-
monwealth* v. *Quinones*, 414 Mass. at 432 n.6, for which
circumstances contemporary with the plea proceedings provide
inferential support. See *Commonwealth* v. *Morrow*, 363 Mass.
601, 603-605 & n.3 (1973), decided six years prior to Pingaro's
plea proceedings, stressing the applicability of *Boykin* v.
*Alabama*, 395 U.S. 238, to all subsequent guilty plea proceed-
ings and laying out an example of a sufficient colloquy. See
also Smith, Criminal Practice and Procedure § 453 (1970 ed. &
Supp. 1979), the authoritative treatise which has since 1970
made the judiciary and the legal profession aware of the require-
ments of *Boykin* v. *Alabama* and provided full guilty plea col-
loquies as models to insure compliance therewith; and ABA
Standards Relating to the Function of the Trial Judge § 4.2 &
commentary (Approved Draft 1972), setting forth the obliga-
tions of the trial judge in insuring plea colloquies consistent
with *Boykin* and the matters of which the judge must advise the
defendant.

In sum, taking the entire circumstances into consideration, we
conclude that the motion judge's refusal to give credence to any
of the improbable and essentially formulaic allegations on which
Pingaro based his supposititious new trial motion was a valid
exercise of her discretion and warranted the denial of the mo-
tion without further inquiry into the content of the 1979 guilty
plea colloquy. Weighed against so flimsy a showing, several
important policies decisively tip the balance against Pingaro and
buttress the denial: first, avoiding unfair prejudice to the public
and the Commonwealth caused by a movant's unexplained
lengthy delay, which inevitably results in faded memories,
destroyed or otherwise unavailable documents, and missing wit-
nesses, see *Commonwealth* v. *DeMarco*, 387 Mass. at 485-486
& n.12; *Commonwealth* v. *Reid*, 8 Mass. App. Ct. at 888 n.1;
*Commonwealth* v. *Hason*, 27 Mass. App. Ct. 840, 844-845

(1989); cf. *Commonwealth* v. *Glines*, 40 Mass. App. Ct. 95, 100 (1996) ("ordering a new trial on the facts presented would acquiesce in and invite opportunistic and mischievous manipulation of the plea process"); and second, affirming the community's interest in finality, which insures the integrity and predictability of our procedures and is of especial weight in regard to convictions on guilty pleas. *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. at 495-496 & nn. 6-7. Compare *Commonwealth* v. *Deeran*, 397 Mass. 136, 142 (1986); *Commonwealth* v. *Tucceri*, 412 Mass. 401, 406 (1992).

Even more significant, however, is the bedrock policy of rule 30(b) itself — indeed, of our entire legal system — whether justice was done. A motion judge's discretionary determination of such a motion "will not be reversed unless it is manifestly unjust." *Commonwealth* v. *Moore*, 408 Mass. 117, 125 (1990). Based upon the foregoing considerations, we are satisfied that justice was done Pingaro. In particular, in light of Pingaro's failure to have demonstrated the slightest prejudice from the asserted error — "some factor of hurt," *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. at 497, some "plausible showing of the materiality to him of the [judge's] failure to" provide the allegedly omitted information, *id.* at 500; or a " 'show[ing] with some plausibility that it would have made a difference [to him] in deciding about a plea' if the judge had engaged in a plea colloquy," *Commonwealth* v. *Russell*, 37 Mass. App. Ct. at 157[18] — we are confident that no manifest injustice here occurred.

> *Order denying motion for withdrawal of guilty plea and allowance of a new trial affirmed.*

---

[18]Compare, however, *Commonwealth* v. *Correa*, 43 Mass. App. Ct. at 718-719. We observe that even had Pingaro received the most copious guilty plea colloquy mandated by the applicable authorities, he would not have had to be informed of the contingent or collateral Federal consequences of his plea, *Commonwealth* v. *Hason*, 27 Mass. App. Ct. at 843-844 (except for the deportation warning mandated by G. L. c. 278, § 29D).