COMMONWEALTH *vs.* SCOTT WHEELER.

No. 99-P-1440.

Norfolk. June 5, 2001. - September 25, 2001.

Present: DREBEN, GRASSO, & BERRY, JJ.

*Practice, Criminal,* New trial, Assistance of counsel. *Constitutional Law,* Assistance of counsel. *Attorney at Law,* Conflict of interest. *Conflict of Interest.*

On a motion for a new trial filed more than twenty-five years after a jury-waived trial in which the defendant, then fifteen years old, had been adjudicated a delinquent by reason of statutory rape, there was neither an abuse of discretion nor other error of law in the judge's denial of the motion, where the defendant failed to demonstrate that he was deprived of the effective assistance of counsel due to trial counsel's alleged conflict of interest and inadequate pretrial preparation and postconviction representation and that, therefore, justice may not have been done when he was adjudicated a delinquent child. [635-636, 638-641]

Discussion of the factors of the presumption of regularity and the principle of finality in a judge's determination whether to allow a motion for a new trial. [636-638]

COMPLAINT received and sworn to in the juvenile session of the District Court of Western Norfolk on January 18, 1973.

A motion for a new trial, filed in the Wrentham Division of the District Court Department on November 18, 1998, was heard by *Gilbert J. Nadeau, Jr.,* J.

*Timothy M. Burke* for the defendant.

*James A. Reidy,* Assistant District Attorney, for the Commonwealth.

GRASSO, J. More than twenty-five years ago, after a jury-waived trial, Scott Wheeler,[1] then fifteen years old, was adjudicated a delinquent child by reason of statutory rape (G. L.

---

[1]While the case relates to a juvenile complaint, because the defendant is now in his forties, we sometimes refer to Mr. Wheeler as "the defendant."

c. 265, § 23). In November, 1998, he moved for a new trial. The impetus for Wheeler's motion was notification that he was being terminated from his position as a police officer in the town of Franklin, occasioned by a nonrenewal of his license to carry a handgun. The nonrenewal stemmed, in turn, from a recent amendment to G. L. c. 140, § 131.[2] From the denial of this motion, he appeals. We affirm.

Termination of Wheeler's employment in consequence of the broad sweep of G. L. c. 140, § 131, would appear to work a harsh result for a youthful transgression that he justifiably could have considered a closed chapter.[3] However, the motion judge did not err in concluding that Wheeler had failed to demonstrate that justice may not have been done when he was adjudicated a delinquent child in 1973. The issue raised is one of criminal law, not of Wheeler's eligibility for a license to carry a firearm or of his job entitlement.[4] Neither trial judges nor appellate

---

[2] The statute rendered ineligible for licensure any applicant who has ever been convicted or adjudicated a youthful offender, or a delinquent child, for a broad array of criminal activity. Specifically, G. L. c. 140, § 131 (*d*)(i), inserted by St. 1998, c. 180, § 41, expressly restricts the granting of a license to carry a firearm to anyone who "has, in any state or federal jurisdiction, been convicted or adjudicated a youthful offender or delinquent child for the commission of (a) a felony; (b) a misdemeanor punishable by imprisonment for more than two years; (c) a violent crime as defined in section 121; (d) a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed; or (e) a violation of any law regulating the use, possession or sale of controlled substances as defined in section 1 of chapter 94C."

The defendant's adjudication for statutory rape appears to fall, at least, within the disqualifying proscriptions of subsection (a).

[3] See G. L. c. 119, § 60, as amended by St. 1991, c. 488, § 1, which provides, in pertinent part, that an adjudication or disposition of delinquency or evidence given in a delinquency proceeding "shall not be received in evidence or used against such child for any purpose in any proceedings in any court . . . nor shall such adjudication or disposition or evidence operate to disqualify a child in any future examination, appointment, or application for public service under the government either of the commonwealth or of any political subdivision thereof."

[4] We express no opinion upon whether G. L. c. 119, § 60, might avail Wheeler in a civil proceeding against the town of Franklin. Neither is it clear whether Wheeler must carry a firearm to serve as a police officer. Wheeler's brief advises that his termination is the subject of an unresolved arbitration proceeding.

justices are, like Merlin, able to do away with harsh and unforeseen collateral or contingent consequences of criminal proceedings with a wave of the judicial wand.

Wheeler's new trial motion contended that he was deprived of the effective assistance of counsel due to trial counsel's (1) conflict of interest; and (2) inadequate pretrial preparation and postconviction representation. Accordingly, he carried the burden of demonstrating that his counsel's performance fell measurably below that of reasonably competent counsel, thereby depriving him of an otherwise available substantial ground of defense, *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), and, consequently, that justice may not have been done. See Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979).

1. *Factual support for the motion.* To support his motion, Wheeler filed only his own affidavit.[5] From such affidavits and the nonevidentiary hearing held by the judge, the following facts emerge.[6]

On January 19, 1973, Wheeler, then age fifteen, was arraigned on a charge of statutory rape of a fifteen-year-old girl alleged to have occurred on December 31, 1972. After only one intervening court appearance, on March 9, 1973, he was adjudicated delinquent.[7] He received a one-year suspended sentence of com-

---

[5]Wheeler actually filed two affidavits, one in support of his new trial motion, and another in support of a motion to reconsider. Although he purports to appeal from the denial of both motions, his brief made only passing reference to the latter and does not rise to the level of appellate argument. See Mass.R. A.P. 16(a)(4), as amended, 367 Mass. 919 (1975). See also *Lyman* v. *Commissioner of Correction*, 46 Mass. App. Ct. 202, 208 (1999).

Because the assertions in the affidavit filed with the motion for reconsideration were not before the judge in ruling on the motion for a new trial, we need not consider them. See *Commonwealth* v. *Ramos*, 402 Mass. 209, 216 (1988). Nonetheless, we do so to illuminate the issues and to demonstrate the paucity of support for the defendant's new trial motion.

[6]On appeal, the parties expanded the appellate record to include the juvenile complaints, which contain minimal notations reflecting the dates of court appearances and the presence of the juvenile's parents. We have further expanded the record with the docket and other papers obtained from the clerk of Wrentham District Court. Although sparse, these indicate that attorney Patrick Murphy represented the defendant and that prior to trial he filed a motion to dismiss that was denied.

[7]Wheeler was also the subject of two other juvenile complaints charging open and gross lewdness (G. L. c. 272, § 16) on different dates from the

mitment to the Department of Youth Services. He waived his right of appeal to a jury and, following successful completion of probation, he was discharged from probation on March 8, 1974. He had no other experiences as a criminal defendant and has had none since.

In 1981, Wheeler became a police officer in Franklin, where he served with apparent success. In October, 1998, after seventeen years on the police force, he received notice that his permit to carry a handgun would not be renewed and, consequently, he would be terminated from employment as a Franklin police officer.

The trial judge has since retired. Wheeler's mother and father, who arranged for counsel, are now deceased, as is trial counsel, attorney Patrick Murphy. Wheeler asserts that, besides representing him, attorney Murphy simultaneously represented three unnamed juvenile codefendants, and an unnamed eighteen year old adult codefendant, all charged with the same statutory rape. He also asserts that he never met or discussed the case or any available defenses with attorney Murphy prior to his trial, and, to the best of his knowledge, neither did his parents. He contends that he was never advised of the perils of joint representation of codefendants, either by his attorney or by the judge.

In essence, Wheeler claims that a genuine conflict of interest existed in the simultaneous representation of himself and the other codefendants, juvenile and adult, by virtue of the divided loyalty of attorney Murphy, who was motivated by an asserted desire to prevent Wheeler and the other juveniles from disclosing that the eighteen year old adult had engaged in consensual intercourse with the minor on several other occasions. See *Commonwealth* v. *Goldman*, 395 Mass. 495, 503, cert. denied, 474 U.S. 906 (1985) (actual conflict of interest may be proved through a showing of an impairment of counsel's independent professional judgment where regard for the attorney's duty to one client would lead to disregard of his duty to the other);

---

statutory rape charge. After trial, the judge found sufficient facts to warrant an adjudication of delinquency on these complaints, but he continued them without a finding. They were ultimately dismissed when Wheeler's probation terminated.

*Commonwealth* v. *Griffin*, 404 Mass. 372, 376 (1989) (actual conflict where there is joint representation and an attorney cannot use his best efforts to exonerate one defendant for fear of implicating another).

Alternatively, Wheeler posits that the joint representation created a potential conflict of interest that materialized into actual prejudice when the codefendants, himself included, failed to testify at trial. See *Commonwealth* v. *Davis*, 376 Mass. 777, 781, 784 (1978) (a potential conflict of interest arises whenever a single attorney represents more than one defendant in a criminal action). Had he testified, he maintains, a significant difference in his level of culpability would have been presented to the judge both at trial and on disposition. Although he admits physical contact with the complainant, Wheeler denies having had sexual intercourse with her.

2. *Denial of the motion.* On appeal, we examine a decision to deny a motion for a new trial to determine whether there has been an abuse of discretion or other error of law. See *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986); *Commonwealth* v. *Stote*, 433 Mass. 19, 22 (2000). "The decision to deny a motion for a new trial lies within the sound discretion of the judge and will not be reversed unless it is manifestly unjust or the trial was infected with prejudicial constitutional error." *Commonwealth* v. *Medina*, 430 Mass. 800, 802 (2000). We conclude that neither ground for reversal is present here. We begin our analysis with the familiar precept that a judge may grant a motion for a new trial only "if it appears that justice may not have been done." Mass.R.Crim.P. 30(b).[8] *Commonwealth* v. *DeMarco*, 387 Mass. 481, 482 (1982). Judges are to apply the standard set forth in rule 30(b) rigorously and

---

[8]We emphasize that the words "justice may not have been done" in rule 30(b) address whether justice was done in the defendant's conviction for the underlying offense. The words do not encompass whether, with the benefit of hindsight, any collateral or contingent consequences flowing from the conviction appear to work an unfairness. The collateral or contingent consequences of a conviction, by themselves, do not amount to justice not being done in the underlying proceeding. See *Commonwealth* v. *Albert A.*, 49 Mass. App. Ct. 269, 271-272 (2000) (to the extent the juveniles believed that their juvenile records would be confidential at the time of their admission to sufficient facts, they were mistaken). See also *Commonwealth* v. *Morrow*, 363 Mass. 601, 605-606 (1973); *Commonwealth* v. *Hason*, 27 Mass. App. Ct. 840, 843 (1989).

should only grant such a motion if the defendant comes forward with a credible reason which outweighs the risk of prejudice to the Commonwealth. See *Commonwealth* v. *Fanelli,* 412 Mass. 497, 504 (1992), and cases cited therein. In a new trial motion asserting ineffective assistance of counsel, whether justice may not have been done equates with whether counsel was constitutionally ineffective. If counsel's ineffectiveness deprived the defendant of an otherwise available substantial ground of defense, see *Commonwealth* v. *Saferian,* 366 Mass. at 96, then there has been prejudicial constitutional error, see *Commonwealth* v. *Medina,* 430 Mass. at 802, and justice has not been done.[9]

(a) *The presumption of regularity and the principle of finality.* Relying on the rule's statement that a judge may grant a new trial motion "at any time if it appears that justice may not have been done," Wheeler argues that the twenty-five year hiatus between trial and the filing of his new trial motion does not invalidate such motion. This is a correct statement of the law. See *Commonwealth* v. *Francis,* 411 Mass. 579, 585-586 (1992) (lapse of time does not, in and of itself, constitute waiver). Implicit in a judge being able to grant a motion "at any time" must be a defendant's ability to file such a motion at any time.

However, the fact that the mere passage of time does not invalidate a new trial motion does not mean that the passage of

---

[9] When the basis alleged in the new trial motion is not prejudicial constitutional error, but some other manifest injustice, then the determination that justice may not have been done equates with a substantial risk of a miscarriage of justice. See *Commonwealth* v. *LeFave,* 430 Mass. 169, 171-174 (1999).

Because the rule of waiver may apply to an ineffective assistance of counsel claim, see *id.* at 173, there may be instances where a judge grants a new trial motion for a previously waived ineffective assistance of counsel claim. When a judge exercises discretion to grant relief from a waived ineffective assistance of counsel claim, there must be a substantial risk of a miscarriage of justice warranting relief from waiver. See *Commonwealth* v. *Curtis,* 417 Mass. 619, 626 (1994); *Commonwealth* v. *Gagliardi,* 418 Mass. 562, 565 (1994), cert. denied, 513 U.S. 1091 (1995); *Commonwealth* v. *LeFave,* 430 Mass. at 173 (1999). The trial judge's exercise of discretion granting relief from waiver will be reviewed by an appellate court under the abuse of discretion standard to determine whether the trial judge was correct in deciding that there would be a miscarriage of justice if relief from waiver were not granted. See *Commonwealth* v. *Amirault,* 424 Mass. 618, 649 (1997); *Commonwealth* v. *LeFave,* 430 Mass. at 173-174 & n.5.

time is irrelevant to its consideration. "The desirability of finality in the adjudication of cases and the Commonwealth's interest in the fair and efficient administration of justice are factors to be considered along with the ever-present concern that justice not miscarry for the defendant." *Commonwealth* v. *Curtis*, 417 Mass. 619, 623 (1994). The presumption of regularity and the principle of finality addressed in *Commonwealth* v. *Lopez*, 426 Mass. 657, 661-665 (1998), *Commonwealth* v. *Grant*, 426 Mass 667, 671, 673-674 (1998), and *Commonwealth* v. *Pingaro*, 44 Mass. App. Ct. 41, 49-50 (1997), have as much applicability in a proceeding resolved by trial as one resolved by plea:

> "[W]hen the defendant leaves his guilty pleas unchallenged for a lengthy period of time, so that the contemporaneous record of the plea is lost . . . and means of reconstruction are made impractical or impossible due to the death or retirement of judges and court reporters, the unavailability of witnesses, the inherent weaknesses and failures of recollection, and other factors commonly associated with the passage of time . . . the absence of a record, and the inability effectively to reconstruct it, may be directly attributed to the defendant's delay and may be said to be the defendant's fault."

*Commonwealth* v. *Lopez*, 426 Mass. at 661.

Rule 30(b) motions are collateral attacks on final decisions. See *id.* at 662. The defendant has the burden of producing a credible reason to reverse the final decision, arrived at after trial or plea, that outweighs the risk of prejudice to the Commonwealth. See *id.* at 661-665. In those instances where the defendant's attack on his conviction or his plea by a rule 30(b) motion proceeds, necessarily, on a basis extrinsic to an unavailable contemporaneous record, a judge is not required to accept the defendant's self-serving affidavit as sufficient to satisfy his burden. When, through no fault of the Commonwealth, the passage of time has destroyed or eroded the record of the proceeding, or other indicia through which a defendant may support and the Commonwealth may rebut the factual basis for the new trial motion, the defendant rather than the Commonwealth must bear the consequences. This rationale

is no less applicable, nor any less cogent, after trial than after plea. It promotes judicial efficiency and finality by discouraging a defendant from letting years pass without challenging the proceeding only to attempt to undo it many years later, whether by neglect or by intention. See *Commonwealth* v. *Francis*, 411 Mass. at 586 (leaving open the question whether a defendant's intentional delay in bringing a rule 30 motion constitutes a waiver).

The presumption of regularity and the principle of finality are particularly applicable when, as here, adverse consequences appear, especially adverse consequences not contemplated or considered possible at the time of the proceeding.[10] See *Commonwealth* v. *Lopez*, 426 Mass. at 663-664; *Commonwealth* v. *Pingaro*, 44 Mass. App. Ct. 41, 49-50 (1997). As in a rule 30(b) motion assailing a guilty plea, in a rule 30(b) motion after trial the initial burden is on the moving defendant to present some articulable reason that the motion judge deems a credible indicator that the presumptively proper trial proceeding was constitutionally defective or created a manifest injustice, above and beyond credulity-straining contentions. See *Commonwealth* v. *Pingaro*, 44 Mass. App. Ct. at 49-50.

(b) *The insubstantiality of the defendant's showing.* The judge herein conducted a nonevidentiary hearing at which Wheeler's counsel expressed the view that an evidentiary hearing was not required. Even without this concession, the judge's determination to decide the new trial motion on the affidavits, without oral testimony, would have been a proper exercise of discretion. See *Commonwealth* v. *Stewart*, 383 Mass. 253, 257 (1981).

Wheeler failed to raise a substantial issue necessitating a hearing. See *Commonwealth* v. *Grace*, 397 Mass. at 313; *Com-*

---

[10]Contingent or collateral consequences have begun to play an ever-increasing role in rule 30(b) challenges to convictions, whether after trial or a plea of guilty. The consequences include (a) immigration status, see *Commonwealth* v. *Hason*, 27 Mass. App. Ct. at 843; *Commonwealth* v. *Hilaire*, 51 Mass. App. Ct. 818, 819-821 (2001); (b) Federal sentencing enhancement, see *Commonwealth* v. *Lopez*, 426 Mass. at 663-664; *Commonwealth* v. *Grant*, 426 Mass. at 669-673; *Commonwealth* v. *Pingaro*, 44 Mass. App. Ct. 41, 48-55 (1997); (c) sex offender registration, see *Commonwealth* v. *Albert A.*, 49 Mass. App. Ct. at 271 (2000); and (d) parole eligibility, see *Commonwealth* v. *Santiago*, 394 Mass. 25, 30 (1985).

*monwealth* v. *DeVincent*, 421 Mass. 64, 67 (1995). The claimed conflict of interest was serious. See *Commonwealth* v. *Dahl*, 430 Mass. 813, 817 (2000) (under art. 12 of the Massachusetts Declaration of Rights, if a defendant demonstrates an actual conflict of interest, he need not show actual prejudice or an adverse effect on his counsel's performance). See also *Commonwealth* v. *Shraiar*, 397 Mass. 16, 20 n.3 (1986). Compare *Commonwealth* v. *Epsom*, 399 Mass. 254, 262-263 (1987) (where a defendant can show only a potential conflict, his conviction will not be reversed except on a showing of actual prejudice). However, the adequacy of Wheeler's factual showing was wanting. See *Commonwealth* v. *Stewart*, 383 Mass. at 257-258; *Fogarty* v. *Commonwealth*, 406 Mass. 103, 110-111 (1989).

Although the conflict of interest was asserted in precise terms, see *Commonwealth* v. *Pingaro*, 44 Mass. App. Ct. at 53, Wheeler's factual support was speculative, premised only upon his unsubstantiated, self-serving, and conclusory characterizations that his attorney represented other juveniles and the adult codefendant[11]; that his parents never spoke with his attorney about his defense; that his attorney, with whom he never spoke to prepare the case, wanted to protect the adult codefendant at his expense; and that he otherwise would have testified, and it would have made a difference in his adjudication or disposition. See *Commonwealth* v. *Stewart*, 383 Mass. at 257-258; *Fogarty* v. *Commonwealth*, 406 Mass. at 110-111. The judge was not obligated to accept as credible Wheeler's affidavit, based substantially on information and belief. See *Commonwealth* v. *Stewart*, 383 Mass. at 259 (a judge is fully warranted in dismissing a motion as to which the factual allegations are obscure or impressionistic and conclusory); *Commonwealth* v. *Grant*, 426 Mass. at 673 (self-serving, conclusory affidavits may be rejected

---

[11]While the judge found that the Commonwealth did not dispute joint representation, the transcript of the hearing reflects the Commonwealth's contention that it had no way of knowing, one way or the other, whether Wheeler's assertion of joint representation was accurate. This showing could have been assisted by the defendant's obtaining from the clerk the dockets of the juvenile and adult codefendants to substantiate that there was, in fact, joint representation, to show whether the cases were tried together or separately, and to clarify the order of the trials. See note 6, *supra.*

as not credible); *Commonwealth* v. *Pingaro*, 44 Mass. App. Ct. at 48 (the credibility, weight, and impact of the affidavit, even if undisputed, are within the judge's discretion).

Apart from his impressionistic and conclusory assertions, Wheeler offered the judge very little reliable and credible evidence. Whether the juvenile codefendants were tried jointly or separately is not known, nor is there a record of whether Wheeler was tried as a principal or a joint venturer and of the evidence upon which the judge adjudicated him delinquent.[12] How Wheeler's admission that he touched the victim but did not have intercourse with her would have made a difference in his being adjudicated on a joint venture theory or on disposition was left unexplained. Conspicuously absent from his showing were affidavits from any of the other juvenile codefendants, from the adult codefendant, or from the victim.[13] Given the passage of time, the dimming of memories, and the deaths of the primary witnesses, Wheeler's attorney and his parents, an evidentiary hearing was likely to be of more theoretical than actual assistance. Cf. *Commonwealth* v. *A Juvenile*, 389 Mass. 128, 134 (1983) (discussing the assumption that an informed parent or person standing in loco parentis would be able to understand the child's rights better than the child would alone). Wheeler failed to raise a substantial issue of an actual or potential conflict of interest that warranted further hearing, and the judge did not err in concluding that he had failed to demonstrate that justice may not have been done.[14]

Similarly lacking in substance are Wheeler's contentions that

---

[12]As to these, the absence of a record and the inability to reconstruct it effectively may be directly attributed to the defendant's delay and may be said to be the defendant's fault. See *Commonwealth* v. *Lopez*, 426 Mass. at 661-662 (discussing the presumption of regularity and the principle of finality).

[13]Although Wheeler's second affidavit promised to produce corroborative evidence from two of the juvenile codefendants, such evidence was not forthcoming. Supporting affidavits from these individuals might have strengthened his allegations. See *Commonwealth* v. *Lopez*, 426 Mass. at 665.

[14]We observe in passing that an argument asserting error in the trial judge's failure to conduct a colloquy as to joint representation would be unavailing. See *Commonwealth* v. *Davis*, 376 Mass. at 784-785 (imposing on a judge, as a matter of court rule rather than constitutional mandate, an affirmative duty in instances of joint representation to inquire on the record as to whether each defendant has been adequately informed of the risks and potential dangers of joint representation and has acknowledged an understanding of this

counsel failed (1) to investigate or properly prepare his case pretrial and (2) to advise him of his right to appeal for a trial de novo posttrial. The former assertion was based on his credulity straining and improbable recollection, from twenty-five years earlier, that not only did he never talk with his attorney prior to trial but also neither did his parents. See *Commonwealth* v. *Duest*, 30 Mass. App. Ct. 623, 627 (1991). The contention that counsel failed to investigate is nothing more than an ipse dixit. The contention that counsel failed to advise him of his right to a trial de novo not only suffers from an inadequacy of reliable and credible proof that he did not know of and did not intelligently waive his appellate rights, but also runs counter to the presumption of regularity. See *Commonwealth* v. *Grant*, 426 Mass. at 673.

> *Order denying motion for new trial affirmed.*

---

information). *Davis* postdates by five years the events at issue here. Moreover, there is no record of whether the judge did, or did not, engage in such a colloquy. Even were *Davis* applicable, on these facts the absence of a record to determine whether a colloquy was given would not defeat the presumption of regularity accorded Wheeler's case. "The mere unavailability of the transcript, through no fault of the Commonwealth but rather as the result of protracted delay in a defendant's attack . . . does not, in and of itself, rebut the normal presumption of regularity accorded the earlier proceedings; nor does it raise the inference that a . . . defendant was not advised of his constitutional rights." *Commonwealth* v. *Pingaro*, 44 Mass. App. Ct. at 49. See *Commonwealth* v. *Lopez*, 426 Mass. at 660-662.