NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-08464


COMMONWEALTH  vs.  CHARLES ROBINSON.



Barnstable.      September 11, 2023. - March 22, 2024.

Present:  Budd, C.J., Gaziano, Lowy, Kafker, Wendlandt,
& Georges, JJ.[1]


Homicide.  Practice, Criminal, Appeal, Competency to stand
     trial, Assistance of counsel, Presumptions and burden of
     proof, Judicial discretion, New trial.  Evidence,
     Competency, Expert opinion.  Constitutional Law, Assistance
     of counsel.




     Indictment found and returned in the Superior Court
Department on May 1, 2000.

     Following review by this court, 482 Mass. 741 (2019), a
second amended motion for a new trial, filed on September 2,
2020, was considered by Mark C. Gildea, J.


     Joseph F. Krowski for the defendant.
     Rose-Ellen El Khoury, Assistant District Attorney, for the
Commonwealth.

_____

     [1] Justice Lowy participated in the deliberation on this case
prior to his retirement.

BUDD, C.J.  On August 21, 2000, the defendant, Charles Robinson, was convicted of murder in the first degree in connection with the shooting death of Edward Figueroa.  The defendant appealed from the conviction.  He also filed a motion for a new trial alleging multiple errors by trial counsel, which we remanded to the Superior Court.  The direct appeal was argued before the motion for a new trial was heard and decided.  After plenary review, we affirmed the conviction and declined to grant extraordinary relief pursuant to G. L. c. 278, § 33E.  See Commonwealth v. Robinson, 482 Mass. 741, 742 (2019).  The defendant's motion for a new trial thereafter was denied.  He appealed from the denial, arguing that the judge erred in concluding that the defendant was not entitled to a new trial due to incompetency and ineffective assistance of counsel.  We now affirm that ruling.

Background.  We present the relevant factual and procedural background as taken from the record, reserving certain details for later discussion.

1.  The homicide.[2]  The victim sold marijuana for the defendant and relied on friends to drive him to the defendant's

---

[2] The evidence presented in the defendant's trial is summarized in Commonwealth v. Robinson, 482 Mass. 741, 742-744 (2019).  We provide a condensed version of events as the jury could have found them.

home to pick up the marijuana.  On the evening of the murder,
the defendant went to the victim's apartment, where he scolded
the victim and threatened to slap and punch him because he did
not have access to a car.  When the victim's girlfriend returned
to the apartment later that evening, she found the victim dead
with multiple gunshot wounds.

    2.  <u>The lockup conversation</u>.  On the fifth day of trial,
trial counsel had a conversation with the defendant in the court
house lockup area about whether the defendant would testify.
During the conversation, the defendant made various
nonresponsive comments.[3]  However, the defendant ultimately

---

[3] Trial counsel had a stenographer present for the conversation.  The following is excerpted from the transcript:

<u>Trial counsel</u>:  "What is your -- what do you -- what do you want to say about whether or not you will testify?"

. . .

<u>The defendant</u>:  "Well, I feel that I shouldn't take part -- excuse my English on that one.  This is not my court."

<u>Trial counsel</u>:  "No.  I understand. . . .  Do you have any -- do you have any questions for me about what we're doing now, what I'm asking you to comment on?"

<u>The defendant</u>:  "Well, it's just this is -- this is a very Godly, Christly, Jesus Christ type of situation.  And I'm not sure you're representing me correctly here."

. . .

<u>Trial counsel</u>:  "And the question I'm asking now of you about whether or not you wish to give testimony, I personally don't think there is much you could say that

stated that he was "clear on" what trial counsel was asking and "would not like to take the stand." During the conversation, trial counsel suggested to the defendant that he might require a

_____

could assist you in the trial; and that's why I'm asking you these things."

The defendant: "My testimony would be in my music."

. . .

Trial counsel: "Well, Charles, do you know what you're here for? I mean, you understand my function and the District Attorney's and the Judge's function, right? I mean, you're not getting into something --"

The defendant: "All right."

Trial counsel: "-- where you're confused, are you?"

The defendant: "No."

Trial counsel: "I know you're an extremely intelligent man. So you're not confused about what's going on this week, right?"

The defendant: "Well, yes, I am rather confused."

Trial counsel: "What are you confused about?"

The defendant: "Excuse me. Excuse my English. Nothing."

Trial counsel: "Your English isn't bad. What do you mean? What's the matter with your English? I'm having no trouble understanding you."

The defendant [to stenographer]: "Put down some laughs."

. . .

Trial counsel: "[T]his concerns me when you start talking like this, laughing like you don't really know what's going on. You almost seem to me to [be] calling out for me to get a psychiatrist or something to talk to you."

psychiatric examination.  However, trial counsel did not raise any concerns related to the defendant's competency or mental health with the judge after the lockup conversation or at any time during trial.

3.  Postconviction.  On August 22, 2000, the day after his conviction, and at the request of his appellate counsel, Dr. Carol E. Montgomery evaluated the defendant and concluded in her report that he had no symptoms of mental illness and that no follow up was necessary.  A little over seven months later, the defendant was committed involuntarily to Bridgewater State Hospital (Bridgewater) for "symptoms of a manic psychosis."  See G. L. c. 123, § 18 (a).  Later that year, the defendant filed a motion for a new trial alleging that trial counsel was ineffective for failing to investigate and present evidence on the defendant's lack of competency to stand trial.

The defendant was transferred back and forth between Bridgewater and State prison over the next few years.  In December 2003, Dr. David Rosmarin diagnosed the defendant with schizoaffective disorder and "periods of mania" that could be controlled with medication.  Rosmarin also opined that a psychiatric evaluation at the time of trial "would have clearly shown [the defendant] to be incompetent."  In June 2004, at an evidentiary hearing on the defendant's motion for a new trial based on the issue of competency, the judge suspended the

hearing and ordered a psychological evaluation for the defendant due to the defendant's behavior.  See G. L. c. 123, § 15 (a). Because proceedings were delayed due to the defendant's ensuing periods of incompetency and consequent institutionalizations, on March 16, 2011, the judge issued an order:

> (a) "that the court will take no further action on the prior motions";
>
> (b) "that the defendant may file an amended motion . . . that clearly sets forth the factual and legal bases for relief";
>
> (c) "that the amended motion must be accompanied by either a detailed supporting affidavit of an appropriate mental health professional or the affidavit of counsel together with the detailed clinical report of an appropriate mental health professional"; and
>
> (d) "that in the event the court conducts a hearing on the amended motion[,] said hearing will commence anew, without reliance upon the testimony and arguments presented on past occasions."

In support of his amended motion submitted in 2014, the defendant employed Dr. Ronald S. Ebert to evaluate the defendant's competency.  Based on his "clinical opinion to a reasonable degree of psychological certainty," Ebert concluded in his report that the defendant "was not competent to stand trial on [the day of the lockup conversation]."  He also noted that the defendant "was demonstrating signs of major mental illness" during the lockup conversation "but was, as usual, trying to hide them."

In 2016 and 2019, respectively, the Commonwealth and appellate counsel each had an expert assess whether the defendant was competent at the time of trial. They arrived at nearly opposite conclusions. The Commonwealth's expert, Dr. Martin J. Kelly, concluded that the defendant "did not suffer from a mental disease, mental defect or other psychiatric condition that resulted in the inability to have a rational and factual understanding of the proceedings and to cooperate with his attorney." The defendant's expert, Dr. Frank DiCataldo, concluded that the defendant was psychotic at the time of trial, and that his psychosis "likely" distorted his ability to understand the proceedings and impaired his ability to consult with his attorney.

In September 2020, the defendant amended his motion for a new trial, submitting DiCataldo's report to support his claim of incompetency. In addition to claiming ineffective assistance of counsel for failing to raise the incompetency issue, the defendant included three additional reasons that his trial counsel was ineffective: (1) failure to move to dismiss the case based on an error in the grand jury proceedings, (2) failure to move to suppress cell site location information (CSLI) that tied the defendant to the crime scene at the relevant time period, and (3) failure "reasonably to communicate" with the defendant. On July 30, 2021, a different

judge (motion judge) denied the motion without a hearing, and the defendant appealed.

Discussion. 1. Scope and standard of review. The defendant's direct appeal initially was stayed so that his first motion for a new trial could be decided. When the hearing on that motion was suspended, the stay on the direct appeal was lifted, and we heard and decided the direct appeal. Because the defendant filed his first motion for a new trial prior to the issuance of the rescript for the direct appeal, he need not petition the single justice as gatekeeper for leave to appeal from the denial of the claims in that original motion. See G. L. c. 278, § 33E. See also Commonwealth v. Raymond, 450 Mass. 729, 729 n.1 (2008). However, the claims added to the defendant's amended motion for a new trial after the direct appeal was decided -- namely, the ineffective assistance of counsel claims unrelated to his competency to stand trial -- are not reviewable without first seeking leave from the gatekeeper. See G. L. c. 278, § 33E. We review the remaining claims underlying the defendant's first motion for a new trial for an abuse of discretion. See Commonwealth v. Sanchez, 485 Mass. 491, 498 (2020) ("A motion for a new trial is addressed to the sound discretion of the judge. '[A]n appellate court will examine the motion judge's conclusion only to determine whether

there has been a significant error of law or other abuse of discretion'" [citation omitted]).

2. Evidentiary hearing. As an initial matter, the defendant claims that the motion judge erred by denying the motion without an evidentiary hearing on the question of the defendant's competency to stand trial. Like the decision on a motion for a new trial, the decision whether to hold an evidentiary hearing or to decide the motion based on affidavits and other documents "is left largely to the sound discretion of the judge." Commonwealth v. Toney, 385 Mass. 575, 579 (1982), quoting Commonwealth v. Stewart, 383 Mass. 253, 257 (1981).

A judge may decide a motion for a new trial on the papers alone "if no substantial issue is raised by the motion or affidavits." Mass. R. Crim. P. 30 (c) (3), as appearing in 435 Mass. 1501 (2001). "In determining whether a 'substantial issue' meriting an evidentiary hearing under rule 30 has been raised, we look not only at the seriousness of the issue asserted, but also to the adequacy of the defendant's showing on the issue raised." Stewart, 383 Mass. at 257-258. Although the judge recognized the question of the defendant's competency as a serious issue, he determined that an evidentiary hearing was not required based on the defendant's submissions. There was no abuse of discretion.

The documents presented to the judge included, among others, expert reports and other evaluations of the defendant's mental health, the trial transcript, and the transcribed conversation in the lockup between the defendant and trial counsel.[4]

The judge determined that an evidentiary hearing was not necessary to decide the motion where the dispute centers on the conclusion each party draws from an undisputed record.  See Commonwealth v. Shuman, 445 Mass. 268, 279 (2005) (dispute among experts does not automatically require evidentiary hearing).  This is especially true here, where the defendant requested an evidentiary hearing in 2021 that would involve the testimony of expert witnesses who opined in 2016 and 2019 respectively on the defendant's competency at a trial that took place in 2000.  See Commonwealth v. Wheeler, 52 Mass. App. Ct. 631, 640 (2001) ("Given the passage of time, the dimming of memories, and the deaths of the primary witnesses . . . an evidentiary hearing was likely to be of more theoretical than actual assistance").  At bottom, there was no showing that, in addition to the evidence

_____

[4] The defendant also submitted affidavits from the defendant's mother and the mother of his children, describing the defendant's unusual behavior in the years prior to the murder.  The judge concluded that testimony from these affiants would be unhelpful as there was no indication that they would provide information beyond what was contained in the affidavits. See Commonwealth v. DeVincent, 421 Mass. 64, 68 (1995).

submitted, an evidentiary hearing would have aided the judge in deciding the issue.  See Commonwealth v. Goodreau, 442 Mass. 341, 348 (2004).  Thus, the judge did not abuse his discretion by deciding the motion without one.[5]

3.  Claims.  a.  Incompetency claim.  It is unconstitutional under both the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights to try (and convict) a person who is not competent to stand trial.  See Commonwealth v. Chatman, 473 Mass. 840, 846 (2016) (Chatman II).  Rather than being dependent upon the "presence or absence of any particular psychiatric diagnosis," whether a defendant is competent to stand trial depends on his or her "functional abilities."  Id. at 846-847, quoting Goodreau, 442 Mass. at 350.  That is, a defendant is competent to stand trial if he or she (1) has "sufficient present ability to consult with his [or her] counsel with a reasonable degree of rational understanding," and (2) has a

---

[5] The defendant also argues that he is entitled to an evidentiary hearing because the 2011 order directing the defendant to file an amended motion for a new trial "presumed a future hearing."  This argument is misplaced.  The order provides that "in the event the court conducts a hearing on the amended motion[,] said hearing will commence anew" (emphasis added).  Thus, contrary to the defendant's contention, there was never an underlying presumption that a new hearing would be held on his motion.

"rational as well as factual understanding of the proceedings" (citation omitted).  Chatman II, supra at 847.

If a defendant raises the issue of his competency before or during trial, the Commonwealth has the burden to prove both prongs by a preponderance of the evidence.  See Commonwealth v. Brown, 449 Mass. 747, 760 (2007).  However, where, as here, the defendant failed to raise the issue until after his conviction, it is he who has the burden of proof.  The defendant must demonstrate "by a preponderance of the evidence that the Commonwealth would not have prevailed had the issue been raised at trial."  Chatman II, 473 Mass. at 847, quoting Commonwealth v. Chatman, 466 Mass. 327, 336 (2013) (Chatman I).  That is, the "defendant bears the burden of establishing that, had the issue been raised before or during trial, the Commonwealth could not have proved either the first or the second prong of the competency test."  Chatman II, supra.  To satisfy this burden, "the defendant need not make a showing that he was incompetent; instead, [he] may satisfy his . . . burden by showing 'that the weight of the evidence of competenc[y] and the weight of the evidence of incompetenc[y] are in equipoise.'"  Id., quoting Chatman I, supra at 336 n.7.  The judge concluded that the defendant did not make such a showing.  We agree.

The defendant and the Commonwealth each engaged an expert to render an opinion as to whether the transcribed lockup

conversation evidenced that the defendant had a mental illness at that time affecting his competency to stand trial.

The defendant's expert, DiCataldo, contended that the defendant's unusual statements during the lockup conversation were "indicative of underlying psychotic thinking." DiCataldo concluded that the defendant was "psychotic" at the time of trial, and that the "psychosis likely distort[ed] his rational understanding of the proceedings against him and significantly impair[ed] his ability to meaningfully consult with his attorney."[6]

Although DiCataldo referenced Montgomery's report, in which she arrived at the opposite conclusion after examining the defendant four days after the lockup conversation, he made no attempt to explain the variance. Moreover, in noting that other evaluators subsequently opined that the defendant was mentally ill, DiCataldo did not contend with the fact that the first such diagnosis did not occur until almost eight months after his trial.

The Commonwealth's expert, Kelly, opined that the lockup conversation was not an indication that the defendant was

---

[6] DiCataldo did not reach a conclusion regarding the defendant's competency to stand trial, stating, "To observe his psychosis would have required directly talking with him and asking him about his perceptions and beliefs about the trial proceedings."

mentally ill, and that he was competent to stand trial. Remarking that an acute psychiatric condition would have manifested itself during the trial, Kelly noted that there was nothing in the trial transcript indicating that the defendant behaved in an unusual manner at all.

Kelly also found relevant the results of Montgomery's evaluation of the defendant the day after he was convicted (four days after the lockup conversation). Specifically, Montgomery observed that the defendant was calm and cooperative, his speech was "well modulated," and his thought process was "organized" and "goal oriented." She also noted that the defendant did not complain of problems with sleep, concentration, or hallucinations. Montgomery concluded that the defendant did not suffer from any mental illness at that time and that a follow-up appointment was not necessary. As a result, it was Kelly's opinion that rather than documenting a "delusional or psychotic mental condition," the transcribed lockup conversation reflected a realization on the part of the defendant that "it was not particularly in his interest" to have the conversation recorded.

Given the record, the judge credited the opinion of Kelly, the Commonwealth's expert, which was based on the information closest in time to the defendant's condition at trial, and thus

the most salient.[7]  The judge ultimately concluded that the defendant made a logical decision not to testify in his own defense and communicated that decision to his attorney.  There was no abuse of discretion.

b.  <u>Ineffective assistance of counsel</u>.  The defendant contends that his counsel was ineffective on a number of fronts, including counsel's (1) failure to raise the competency issue, (2) failure to "reasonably . . . communicate with" the defendant, (3) failure to move to dismiss the case based on an error in the grand jury proceedings, and (4) failure to move to suppress CSLI that tied the defendant to the crime scene at the relevant time period.  However, as mentioned <u>supra</u>, only claims raised before the issuance of the rescript for the direct appeal are reviewable under G. L. c. 278, § 33E, without a preliminary determination by a gatekeeper.  As the first motion for a new trial raised a claim of ineffective assistance of counsel for trial counsel's failure to raise the competency issue at trial, we limit our review accordingly.

When reviewing a claim of ineffective assistance of counsel under § 33E, we evaluate whether a substantial likelihood of a

---

[7] As for the affidavits from the family members, the judge considered the credibility of the affidavits in light of the family members' motives and ultimately afforded them little, if any, weight.  See <u>Commonwealth</u> v. <u>Grant</u>, 426 Mass. 667, 673 (1998).

miscarriage of justice occurred.  See Commonwealth v. Yat Fung Ng, 489 Mass. 242, 249 (2022), S.C., 491 Mass. 247 (2023).  That is, we determine whether any error on the part of defense counsel was likely to have influenced the jury's conclusion.  See id.  In order to prevail on the theory that failing to raise competency as an issue constituted ineffective assistance of counsel, the defendant must show that the claim "would have been successful."  Commonwealth v. Comita, 441 Mass. 86, 91 (2004).  As the motion judge correctly concluded that the competency claim lacked merit, the defendant failed to make the necessary showing.  There was no error.

Relatedly, the defendant contends that trial counsel was ineffective because he failed "reasonably to communicate with [the defendant]."  Although the defendant's argument encompasses the entire attorney-client relationship, for the reasons explained supra, we focus on trial counsel's work during and after the lockup conversation.  According to the defendant, had trial counsel "better appreciated [the defendant's] psychosis during the lockup conversation," counsel would have requested a mental health evaluation and the defendant would not have been convicted.  This argument is without merit for reasons stated supra.

Moreover, "to provide a ground for a new trial, the breakdown of the attorney-client relationship must be such that

it leads to an apparently unjust verdict, prevents an adequate defense or threatens the defendant's right to a fair trial" (citations and quotation omitted).  Commonwealth v. Tuitt, 393 Mass. 801, 806 (1985).  The defendant's unusual comments notwithstanding, the lockup conversation provides no evidence of a breakdown of the attorney-client relationship at all, much less one that requires a new trial.

4.  Review under G. L. c. 278, § 33E.  The defendant requests relief under G. L. c. 278, § 33E, in the form of a new trial.  We reviewed the entire record of this case when it was before this court on direct appeal and rejected the defendant's request for extraordinary relief under § 33E at that time.  See Robinson, 482 Mass. at 753.  We see no basis to revisit that ruling.

Conclusion.  For the foregoing reasons, the order denying the defendant's motion for a new trial is affirmed.

So ordered.